No. 36,601

THE FIRST NATIONAL BANK OF NORTON, *Appellee,* v. E. E. HARPER, *Appellant.*

(169 P. 2d 844)

Opinion filed June 8, 1946.

*Ralph H. Noah,* of Beloit, argued the cause for the appellant.

*Wm. B. Ryan,* of Norton, argued the cause, and *Keith G. Sebelius,* of Norton, was on the brief for the appellee.

The opinion of the court was delivered by

BURCH, J.: This case creates the necessity for consideration of the legal effect of a dormant judgment and the significance of ancillary proceedings occurring prior to the dormancy of the judgment. It does not concern revivor proceedings.

On January 6, 1941, the bank obtained a judgment against Harper for $2,440.09 and costs. No execution was issued on the judgment until January 29, 1946. On such date an execution was issued and a motion to quash the execution was filed thereafter predicated upon the contention that the judgment was dormant. The trial court overruled the motion and this appeal followed. The bank contends that the judgment was not dormant because it had been asserted in an ancillary proceeding within five years from its date. During the five years following the entry of the bank's judgment against Harper the Federal Land Bank brought an action to foreclose a mortgage which Harper had executed to such bank. The First National Bank of Norton was named as a codefendant in such action for the purpose of having its statutory judgment lien

declared junior and inferior to the mortgage lien held by the Federal Land Bank. The First National Bank did not appear in the action brought by the Federal Land Bank until after an order of sale had been issued in such case. Such order of sale was issued on the 14th day of October, 1943. On the 10th day of November, 1943, the First National Bank, with leave of court, filed an answer and cross petition, alleging therein that it had a statutory judgment lien upon the mortgaged property and praying therein that if any proceeds over and above the amount of the lien of the Federal Land Bank should be obtained by reason of the sale of the property such surplus should be applied upon the payment of the First National Bank's judgment, subject to the payment of taxes and costs. The property was sold pursuant to the original order of sale and on January 10, 1944, the court sustained a motion to confirm the sale which had been made to the Federal Land Bank for the amount of its judgment, taxes and costs. Consequently, no payment was made upon the judgment previously obtained by the First National Bank. When the court permitted the First National Bank to file its answer and cross petition instanter on November 10, 1943, the leave was granted upon the condition that any judgment rendered thereon would not prejudice the order of sale which had been theretofore issued. The court entered judgment for the First National Bank upon its answer and cross petition and therein decreed that the judgment it had previously acquired against Harper was a second lien upon the land involved in the mortgage foreclosure case, but ordered that such decree should not prejudice the sale. A new order of sale was not issued in furtherance of the second lien and the original order of sale under which the property was sold did not refer in any manner to the second lien later allowed the First National Bank. Obviously, it could not have referred to such second lien because it had not been established at the time the order of sale was issued. No journal entry of judgment was filed covering the second lien of the First National Bank until the 19th day of February, 1946, and no execution of any kind was ever issued in the action brought by the Federal Land Bank seeking to enforce the judgment which the First National Bank had previously obtained in the original action against Harper. Incidentally, it should be noted that Harper was never given any notice of any kind that the First National Bank had later appeared and filed an answer and cross petition in the action brought by the Federal Land

Bank against Harper et al. Harper had been served with the original summons in such case but had failed to appear and had allowed judgment to be entered against him by default.

1. Preliminary consideration will be given to the legal effect of a dormant judgment. G. S. 1945 Supp. 60-3405, provides that if an execution shall not be sued out within five years from the date of any judgment the judgment shall become dormant and shall cease to operate as a lien on the estate of the judgment debtor. During a period of two years following the expiration of such five years a dormant judgment can be revived pursuant to the provisions of G. S. 1935, 60-3221. Unless a judgment is revived within such statutory period it dies. During the two years prior to its death, however, it is only dormant. While a dormant judgment is not dead, it is asleep upon its death bed, inert and incapable of any effective manifestation of legal life. While such a comatose condition continues the judgment does not possess the power necessary for process. An execution issued upon it is void. From the case of *Denny v. Ross*, 70 Kan. 720, 79 Pac. 502, paragraph one of the syllabus is quoted as follows:

"An execution issued upon a dormant judgment is void; it neither receives life from the judgment nor imports life to it."

It follows that proceedings in aid of execution upon a dormant judgment also are invalid. Such a judgment is too feeble to be the basis for garnishment. (See *Grace v. Pierce*, 127 Miss. 831, 90 So. 590, also reported in 21 A. L. R. at 1035 and the annotation beginning at page 1038, wherein it is held that the issuance of a garnishment prior to dormancy is not sufficient to toll the statute if the judgment becomes dormant prior to any additional judgment being entered in the garnishment proceedings.) In *Shields v. Stark* [1899] (Tex. Civ. App.), 51 S. W. 540, it was held that a writ of garnishment was not in any sense an execution because it was in the nature of a pleading and not a final process to enforce the collection of a judgment. In such connection see our recent case of *Porter v. Trapp*, 160 Kan. 662, 165 P. 2d 591, and also, *Ring v. Palmer*, 309 Ill. App. 333, 32 N. E. 2d 956. A dormant judgment is too frail to sustain attachment and it has been held that the issuance of an attachment is not the equivalent of an execution. (See *Croskey, Appellant, v. Croskey*, 306 Pa. 423, 160 Atl. 103, and, also, *In re Cake's Estate*, 186 Pa. 412, 40 Atl. 568.)

As long as a judgment lingers in such legal lethargy it cannot support mandamus. (*State v. McArthur,* 5 Kan. 281.) It is paralyzed by the inattention and apparent indifference of its possessor and a statutory presumption prevails that the judgment has been paid. Purchasers of property may proceed upon the presumption because the judgment is no longer a lien. It is utterly useless and will become entirely lifeless unless it is awakened from its somnolent impotency by revivor within the period provided by the statute. Consequently, the execution issued in the present case had no legal vitality and the motion to quash should have been sustained unless the ancillary or auxiliary proceedings in the case brought by the Federal Land Bank were equivalent to a prior execution and saved the original judgment from becoming dormant.

2. Counsel for the bank contend that whenever the holder of a judgment affirms its vitality in any legal proceeding he asserts that it is unpaid and that he is intending at some time, in some way to enforce its collection and that such an assertion is sufficient compliance with the statutory requirement. In support of such contention see *Halsey v. Van Vliet,* 27 Kan. 474, *Kothman v. Skaggs,* 29 Kan. 5, and *Capital Bank v. Huntoon,* 35 Kan. 577, syl. ¶ 8. The question, therefore, arises whether life of a judgment can be prolonged by ancillary proceedings. Such a question is one upon the answer to which the judicial doctors have differed. (See cases cited in annotation in 21 A. L. R. beginning at page 1049.) A somewhat exhaustive search has failed to reveal many additional cases upon the general question, but see *Hoskins v. Peak,* 100 Okla. 124, 228 Pac. 478; also, *Ring v. Palmer,* supra, and *Blair v. Rorer's Adm'r.,* 135 Va. 1, 116 S. E. 767.

In *Denny v. Ross,* supra, this court clearly held that ancillary proceedings pending in the probate court were insufficient to extend the time in which a judgment became dormant. There is, however, not only a contrariety of judicial conclusions in answer to such question but also as to the proper answer to the correlating question whether a special execution issued in such auxiliary proceedings is sufficient to toll the time in which a judgment becomes dormant. (See *Watson v. Iron-works Co.,* 70 Kan. 43, 74 Pac. 269.) The general rule is to the effect that since the right of revivor as it exists today is purely a statutory remedy, strict compliance must be made with the terms of the statute, but opinions differ as to what constitutes strict compliance. Some of the diversity of opinion arises

by reason of different wording within the statutes and attempts to harmonize statutory construction with old rules arising at common law in connection with the writ of *scire facias* (that you make known). Practically all of the authorities seem to agree, however, that the statutory period cannot be extended by ancillary proceedings unless in connection therewith some legal process issue regardless of whether it be a general execution, special execution, order of sale or some other writ carrying into effect the final judgment of a court.

Our applicable statute reads as follows:

"If execution shall not be *sued out* within five years from the date of any judgment, including judgments in favor of the state or any municipality in the state, that now is or may hereafter be rendered, in any court of record in this state, or within five years from the date of any order reviving such judgment, or if five years have intervened between the date of the last execution *issued* on such judgment and the time of *suing out* another writ of execution thereon, such judgment including court costs and fees therein shall become dormant, and shall cease to operate as a lien on the estate of the judgment debtor. . . ." (G. S. 1945 Supp., 60-3405.) (Emphasis supplied.)

In passing perhaps it is prudent to consider: What is an execution? Our statute, G. S. 1935, 60-3401, defines an execution as follows:

"Executions shall be deemed *process of the court,* and shall be *issued* by the clerk, and directed to the sheriff of the county. . . ." (Emphasis supplied.)

From *Webber v. Harshbarger, Sheriff,* 5 Kan. App. 185, at 186, the following is quoted:

". . . What is an execution?

" 'Putting the sentence of the law in force.' 3 Blackstone's Commentaries, 412.

" 'The act of carrying into effect the final judgment or decree of a court. . . . The writ which directs and authorizes the officer to carry into effect such judgment.' Bouvier's Law Dictionary.

"This definition has been adopted by nearly every state in the union.

" 'An execution at law is a writ issuing out of a court, directed to an officer thereof, and running against the body or goods of a party.' (*Brown v. United States,* 6 U. S. Ct. Claims, 178.

.   .   .   .   .   .   .   .   .   .   .   .   .

" 'An execution is the end of the law. It gives the successful party the fruits of his judgment.' *United States v. Nourse,* 9 Peters, 28."

Other definitions to the same effect are given in the cited case, and see, also, *Norton v. Reardon,* 67 Kan. 302, 72 Pac. 861. Thus, it will be seen that an execution implies its issuance.

In order to prevent the dormancy of a judgment our statute obviously requires that the execution be "sued out" or "issued." Our decisions carefully protect and preserve the point. In all of the cases hereinbefore cited, in which it has been held that ancillary proceedings were sufficient to toll the time of the statute, some writ in the nature of or equivalent to an execution, has issued. In *Halsey v. Van Vliet,* supra, the opinion reads as follows: ". . . and that there must also be an effort in good faith by the *issue* of valid process to make a collection, . . ." (p. 482.) In *Kothman v. Skaggs,* supra, we said: "The *issuing* of an execution in a case is simply an attempt to enforce the judgment, . . ." (p. 16.) In *Watson v. Iron-works Co.,* supra, attention was called to the fact that "it is the *'suing out'* of a writ of execution which extends the validity of a judgment. [Citing *Saville v. Schroyer,* 65 Kan. 303, 68 Pac. 1130.]" (p. 49.) (Also followed in *Dodson v. Continental Supply Co.,* 175 Okla. 587, 53 P. 2d 582.) From the dissenting opinion in the Watson case by Mr. Justice Rousseau A. Burch, later Chief Justice, the following is quoted:

". . . 'If execution be not *sued out,'* the judgment becomes dormant; that is, if some kind of process *issued* by the clerk and directed to the sheriff, which the law classifies under the term 'execution,' be not *sued out,* the judgment becomes dormant." (p. 52.) (Emphasis supplied.)

Later in such opinion appears the following: "All that is necessary is that it *issue.* [Citing *Saville v. Schroyer,* supra.] That is, all the judgment creditor need do to keep his judgment alive is to assert its vitality by having *process merely issued* for its enforcement." (p. 55.) And the following also appears: ". . . 'whether the writ which the officer holds be called an execution, or an order of sale, it is but a written command, under the seal of the court, authorizing and directing him to execute its judgment.' . . . I believe that the *issuance* of any process which is for the enforcement of the judgment prevents dormancy; . . ." (p. 61.) On rehearing (70 Kan. 61, 78 Pac. 156) the court modified its former decision and paragraph two of the syllabus reads as follows: ". . . and an order of sale or special execution *sued out* by the plaintiff in the decree to enforce the same will have the effect of preventing a money judgment in favor of one defendant against his codefendant from becoming dormant, if the fact of such judgment and the amount thereof is recited or referred to in the order of sale. [Citing *State v. McArthur,* supra.]" From the opinion the fol-

lowing is quoted: ". . . 'The principle upon which the *issue* of an execution keeps alive a judgment is that thereby the plaintiff affirms its vitality. . . . ' [*Halsey v. Van Vliet,* 27 Kan. 474, 481.] (p. 66.) The opinion continues: "Therefore, the doctrine that an order of sale is an execution, and that its *issuance* will keep alive the judgment upon which it is *sued out,* has no application here . . ." (p. 67.) It follows that some process must issue upon a judgment in order to save it from dormancy. The commencement of an action is not enough.

The annotation in 21 A. L. R. 1035, *et seq.,* supra, cites the case of *Ruth v. Wells,* 13 S. D. 482, 83 N. W. 568 from which the following is quoted:

" 'The rule of universal importance to the owners of real property and society in general is that time, when it has once commenced to run by operation of statute, will not cease to do so by reason of any subsequent event or condition for which the statute has not expressly provided.' " (p. 1052.)

Our statute does not expressly provide that the time shall cease to run by any proceeding other than the issuance of an execution. The statute does not refer to the bringing of an action. From the A. L. R. note the following is quoted:

"So, where it is required by statute that, in order to prevent the dormancy of a judgment, an execution must be *issued* thereon within a certain time, the *commencement* of an action by the judgment creditor to subject the real estate of his debtor to the satisfaction of the judgment does not operate to extend the lien of the judgment, . . ." (p. 1052.) (Emphasis supplied.)

In the early case of *Flagg v. Flagg* (1894), 39 Neb. 229, 58 N. W. 109, it was said:

"In order to continue the lien beyond this period, the statute, in express terms, requires that an execution must be *issued* within the life of the judgment. The *issuance* of an execution within five years prolongs the judgment and preserves the lien of the judgment for five years longer. The *bringing of this action* was not equivalent to, nor did it take the place of, the *issuing* of executions upon the judgments. The pendency of this suit did not prevent plaintiff from suing out executions." (p. 236.) (Emphasis supplied.)

And in *Swafford v. Howard,* 20 Ky. Law Rep. 1793, 50 S. W. 43, it was held that an action to enforce a judgment does not stop the statute of limitations, when no execution is issued within the required statutory time. Texas has held that the preparation of and delivery to the sheriff with instructions to hold the execution is not equivalent to the issuance thereof. (*Harrison v. Orr,* [Tex. Civ. App.] 296 S. W. 871, headnote ¶ 10.) To same effect see, also,

*McKeithen v. Blue,* 149 N. C. 95, 62 S. E. 769, 128 Am. St. Rep. 654, and, also, *Minter v. Felder,* 55 Ga. App. 785, 190 S. E. 273. Some writ seeking to enforce the judgment must actually be issued if the holder desires to preserve its life.

The order of sale issued in the case of the *Federal Land Bank v. Harper, et al.,* did not recite the judgment in any manner which the First National Bank had obtained against Harper in the prior action. Therefore, it could not have been in the nature of an execution issued on such judgment. No execution ever issued in the original case brought by the First National Bank against Harper until after more than five years had expired from the date the judgment was entered. The judgment was dormant at the time such execution issued and, therefore, the attempted execution was a nullity.

Consequently, the trial court's ruling is reversed with directions to sustain appellant's motion to quash the execution.