No. 65,726

DeKalb Swine Breeders, Inc., *Appellant*, v. The Woolwine Supply Company; Thomas M. Grice; Wallace Kneller; Catherine Kneller; Michael L. Schmidt; and Denny Whitman, d/b/a Whitman Trucking Company, *Defendants*, and Canal Insurance Company, *Appellee*, v. Hartford Fire Insurance Company, *Garnishee/Appellee*.

(809 P.2d 1223)

Opinion filed April 15, 1991.

*Steven L. Brooks*, of Smith, Greenleaf & Brooks, of Liberal, argued the cause, and *Mark W. Boswell*, of DeKalb Genetics Corporation, of DeKalb, Illinois, was with him on the briefs for appellant.

*James H. Morain,* of Neubauer, Sharp, McQueen, Dreiling & Morain, P.A., of Liberal, argued the cause and was on the brief for appellee Canal Insurance Company.

*Michael A. Doll,* of Mangan, Dalton, Trenkle, Rebein & Doll Chartered, of Dodge City, argued the cause and was on the brief for garnishee/appellee Hartford Fire Insurance Company.

The opinion of the court was delivered by

ABBOTT, J.: This is an appeal by DeKalb Swine Breeders, Inc., from the trial court's order denying its motion to revive a judgment and dismissing its garnishment action. DeKalb appeals, contending that a timely garnishment action was still pending when the trial court dismissed the action and that the motion to revive was timely filed.

DeKalb sued Denny Whitman, d/b/a Whitman Trucking Company, Canal Insurance Company (Canal) (one of Whitman's insurers), and others for negligence in a motor vehicle accident. DeKalb did not name Hartford Fire Insurance Company (Hartford), Whitman's cargo insurer, as a defendant. On June 14, 1982, the trial court entered judgment in favor of DeKalb and against Whitman and Canal for $17,654.65 for damages to DeKalb's hogs and $4,844.20 for damages to DeKalb's trailer. The $4,844.20 has been paid and is not in dispute.

On January 7, 1983, DeKalb filed a request for the court clerk to issue an order of garnishment against Hartford. DeKalb requested that service of this order be made on both Hartford and Whitman. The order of garnishment against Hartford was issued on January 7, 1983, and service was had on January 11, 1983.

DeKalb's arguments center around the fact that on the same date (January 7, 1983), the same form was issued to be served on Whitman. The caption lists Hartford as the garnishee. The title of the instrument is "Order of Garnishment." The text begins, "The State of Kansas to said Garnishee: Denny Whitman, d/b/a Whitman Trucking Co., *Kismet,* KS." (Emphasis supplied.) The return of service shows no service and that "subject lives in *Plains,* KS." (Emphasis supplied.)

On January 27, 1983, another garnishment form, identical to the January 7, 1983, form, was issued to Whitman, except that

it listed him as living in Plains, Kansas. Service was had on Whitman on January 28, 1983.

Hartford filed an answer denying it was holding money or property of DeKalb and denying that it was indebted to DeKalb. DeKalb filed a reply stating that, at the time of the accident, Hartford insured Whitman and specifically insured the cargo (DeKalb's hogs).

Between 1983 and 1990, two sets of interrogatories were served and other miscellaneous pleadings were filed and depositions taken. Then, in 1990, a notice of substitution of attorney for DeKalb was filed.

DeKalb filed a motion to revive the judgment against Whitman and Canal on January 22, 1990. In it, DeKalb stated that, because a garnishment was pending, it did not believe that judgment was dormant but that it was filing the motion for purposes of clarification. Copies of this motion were mailed to attorneys for Canal and Hartford. A summons was issued for Whitman but was returned with no service because Whitman was no longer in Meade County.

Canal was served. Canal argued that because no garnishment was ever issued against it, the period for dormancy and revival had run. It also argued that because joint and several liability had been abolished, garnishment or execution must be made against each defendant in order to prevent dormancy.

Hartford filed a motion to dismiss the garnishment proceedings, arguing that the only true garnishment order was issued on January 7, 1983, and that the pending garnishment proceeding did not toll the running of the time limits. Thus, Hartford argues, the judgment became dormant five years from January 7, 1983, when garnishment was issued. Hartford contends that two years after the judgment became dormant (January 7, 1990) the judgment could no longer be revived.

In a memorandum opinion filed August 3, 1990, the trial court found that garnishment was issued on January 7, 1983, to Hartford. The trial court held that the other documents entitled "Order of Garnishment" (actually served on January 27, 1983) were merely notice that Hartford had been garnished. The trial court reasoned that January 7, 1983, to January 22, 1990, (when the motion to revive was filed) was over seven years and it was too

late to revive the judgment. The trial court held that a pending garnishment proceeding does not toll the statute of limitations. On August 21, 1990, the trial court filed a journal entry denying the motion to revive and dismissing the garnishment against Hartford.

K.S.A. 1990 Supp. 60-2403(a) provides:

"If a renewal affidavit is not filed *or if execution, including any garnishment proceeding*, income withholding proceeding or proceeding in aid of execution, *is not issued, within five years* from the date of the entry of any judgment in any court of record in this state, including judgments in favor of the state or any municipality in the state, *or within five years from the date of any order reviving the judgment* or, if five years have intervened between the date of the last renewal affidavit filed *or execution proceedings undertaken* on the judgment and the time of filing another renewal affidavit or *undertaking* execution proceedings on it, the judgment, including court costs and fees therein shall become dormant, and shall cease to operate as a lien on the real estate of the judgment debtor. Except as provided in subsection (b), when a judgment becomes and remains dormant for a period of two years, it shall be the duty of the clerk of the court to release the judgment of record when requested to do so.

"A 'renewal affidavit' is a statement under oath, signed by the judgment creditor or the judgment creditor's attorney, filed in the proceedings in which the judgment was entered and stating the remaining balance due and unpaid on the judgment." (Emphasis supplied.)

K.S.A. 1990 Supp. 60-2404 sets forth the period for revivor of a dormant judgment:

"A dormant judgment may be revived and have the same force and effect as if it had not become dormant if the holder thereof *files a motion for revivor* and *files* a request for the immediate issuance of an execution thereon if such motion is granted. Notice of the *filing* of the motion shall be given as for a summons under article 3 of this chapter. If the motion for revivor was *filed* within two years after the date on which the judgment became dormant or, in the case of a child support judgment, was filed during the period prior to the child's emancipation, within two years after the child's emancipation or within two years after the judgment became dormant, whichever is later, on the hearing thereof the court shall enter an order of revivor unless good cause to the contrary be shown, and thereupon the execution shall issue forthwith. On the hearing of a motion to revive a child support judgment, the court may enter an order to prevent the unjust enrichment of any party or to ensure that payments will be disbursed to the real party in interest. A judgment may also be revived by the filing of a written stipulation of revivor signed by all of the parties affected thereby. For the purpose of this section and K.S.A. 60-2403 and amendments thereto,

attachment, income withholding or garnishment process shall have the same effect as the issuance of an execution." (Emphasis supplied.)

The operation of these statutes has been explained as follows:

"In Kansas, under these statutes, a party may, by the *issuance* of an execution every five years, keep a judgment alive indefinitely. The judgment remains in force without execution for five years, and the plaintiff may revive it at any time within two years if it has become dormant thereafter, so that a plaintiff may neglect his judgment for seven years, lacking a day, and then revive it and put it in force for five years more." (Emphasis supplied.) *Johnson Brothers Wholesale Liquor Co. v. Clemmons*, 233 Kan. 405, 407-08, 661 P.2d 1242, *cert. denied* 464 U.S. 936 (1983).

The initial question here is if seven years passed between issuance of garnishment and the motion to revive. The garnishment order to Hartford was issued on January 7, 1983. The motion to revive was filed January 22, 1990.

Black's Law Dictionary defines garnishment as "A proceeding whereby a plaintiff creditor, *i.e.*, garnishor, seeks to subject to his or her claim the property or money of a third party, *i.e.*, garnishee, owed by such party to defendant debtor, *i.e.*, principal defendant." Black's Law Dictionary 680 (6th ed. 1990). Garnishment, then, is directed at a third person, not the judgment debtor. The document sent to Whitman would not be an order of garnishment. As listed in the caption, the garnishee was Hartford.

Notice of post-judgment garnishment of a third party is not statutorily required to be served on the judgment debtor. K.S.A. 1990 Supp. 60-717(b) directs the procedure for service and return of a garnishment order:

"The order of garnishment shall be served on the garnishee, together with two copies of the form for the garnishee's answer prescribed in K.S.A. 60-718 and amendments thereto and returned by the officer making service in the same manner as an order of attachment. If the order is served prior to a judgment on the plaintiff's claim, the order shall also be served on the defendant, if the defendant can be found, but failure to serve the defendant shall not relieve the garnishee from liability under the order."

The judgment debtor receives notice when the garnishee files an answer and the clerk mails the judgment debtor a copy of the answer of the garnishee to the judgment debtor, pursuant to K.S.A. 1990 Supp. 60-718(c).

Because the notice to Whitman was not statutorily required and, in fact, had no legal effect, it was not an order of garnishment within the meaning of K.S.A. 1990 Supp. 60-2403 and the running of the time limit for dormancy was not extended by the notice served on Whitman.

Thus, unless the running of the time limit was tolled because a garnishment proceeding was pending from January 7, 1983, the judgment is dormant and not subject to revival after January 7, 1990.

The trial court relied, in part, on *Long v. Smith,* 125 Wash. 183, 215 Pac. 342 (1923), in which the Washington Supreme Court held that a pending garnishment did not toll the running of the dormancy statute.

The language of K.S.A. 1990 Supp. 60-2403 is such that the pending garnishment proceeding does not toll the time period. The statute uses the words "if execution, including any garnishment proceeding, income withholding proceeding or proceeding in aid of execution, *is not issued,* . . . or, if five years have intervened between the date of the last . . . execution proceedings undertaken on the judgment and the time of filing another renewal affidavit . . . ." (Emphasis supplied.) It also speaks of "undertaken" and "undertaking."

The word "issue" is defined as:

"To send forth; to emit; to promulgate; as, an officer issues orders, process issues from a court . . . . When used with reference to writs, process and the like the term is ordinarily construed as importing delivery to the proper person, or to the proper officer for service, etc." Black's Law Dictionary 830-31 (6th ed. 1990).

The word "undertake" has a very broad meaning, but taken in context, as used in the statute, ("undertaken" and "undertaking") it means "attempt." Black's Law Dictionary 1526 (6th ed. 1990).

In *Saville v. Schroyer,* 65 Kan. 303, 68 Pac. 1130 (1902), it was argued that because an execution was never returned, the judgment became dormant. The court said, "The statute . . . provides that it is the issuance, and not the return, of an execution that tolls the statute." 65 Kan. at 304. Generally, "to issue" means to deliver process to the officer charged by law with its service. *Marshall v. Matson,* 171 Ind. 238, 244, 86 N.E.

339 (1908). See *McIntosh v. Standard Oil Co.*, 121 Neb. 92, 103, 236 N.W. 152 (1931).

Holding that it is the issuance of garnishment that is relevant accords with the rules for statutory construction. Dormancy and revivor statutes are to be strictly construed. *Wichita Fed. Sav. & Loan Ass'n v. North Rock Rd. Ltd. Partnership*, 13 Kan. App. 2d 678, 684, 779 P.2d 442, *rev. denied* 245 Kan. 788 (1989); *Clark v. Glazer*, 4 Kan. App. 2d 658, 609 P.2d 1177 (1980).

DeKalb points to two older cases which stand for the proposition that when an action on a judgment is pending, the time limits do not run. In *Bank v. Edwards*, 84 Kan. 495, 499, 115 Pac. 118 (1911), the court said:

> "Finally, it is argued that the lien of the appellee is lost because an execution was not issued upon its judgment for more than five years. This action to enforce the lien of that judgment was commenced in less than one year after it was rendered, and has been pending ever since. An execution to preserve the vitality of the lien was not necessary. (*Treat v. Wilson*, 65 Kan. 729.)"

In *Treat v. Wilson*, 65 Kan. 729, 732, 70 Pac. 893 (1902), this court had said of an action on a judgment:

> "As the judgment was not dormant when the action was brought, it is elementary and axiomatic that no statute of limitations, or other statute, can intervene during the pendency of the action to prevent a recovery, and that the pendency of the action on the judgment obviated the necessity of the issuance of an execution on the judgment or other proceedings to preserve its vitality as a cause of action."

In *First National Bank v. Harper*, 161 Kan. 536, 169 P.2d 844 (1946), this court considered whether an action to foreclose a mortgage restarted the five-year time limit to prevent a judgment from becoming dormant. This court held that, because the statute in effect at the time only mentioned executions and because the statute should be strictly construed, only issuance of an execution affects the life of a judgment and "[t]he commencement of an action is not enough." 161 Kan. at 542.

Hartford argues that *Harper* overruled *Treat* and *Edwards*. DeKalb argues that *Harper* never reached the question of the effect of a pending action and that it merely held that a foreclosure action does not affect the dormancy statute.

There is a difference between an action on a judgment and an execution or garnishment. An action on a judgment is an original cause of action. An execution is not a cause of action. *Brown v. Bell*, 46 Colo. 163, 167, 103 Pac. 380 (1909); *McCallum v. Gornto*, 127 Fla. 792, 794, 174 So. 24 (1937). Likewise, a garnishment is not considered a cause of action—it is referred to as an ancillary or auxiliary proceeding. *Hutchinson v. Nelson*, 63 Kan. 327, 65 Pac. 670 (1901); *Whinery, Executrix v. Kozacik*, 216 Ind. 136, 142, 22 N.E.2d 829 (1939). The earlier decisions of *Treat* and *First National Bank* are actions on judgments prior to the new statutory language and are not persuasive in interpreting current legislative intent.

DeKalb attempts to make an analogy between the time limit for dormancy and a statute of limitations for a cause of action. DeKalb argues: "A personal injury plaintiff who faces a two-year statute of limitations does not have to file a new suit every two years." This argument is not compelling because DeKalb is talking about a true cause of action, while this case concerns keeping a judgment alive pursuant to statutory authority.

We conclude that, as far as execution and garnishment is concerned, the legislature intended that, in computing when a judgment becomes dormant, the time commences to run from the date garnishment or execution is issued and not from the date the garnishment or execution proceeding is completed. Thus, the trial court did not err in refusing to revive the judgment.

Having held the original judgment is not subject to revival, the remaining arguments are moot.

Affirmed.