**James P. O'CONNOR, Plaintiff,**

v.

**MIDWEST PIPE FABRICATORS, INC., Defendant, Counterclaimant and Third–Party Plaintiff,**

v.

**Elizabeth L. O'Connor and Pipex Inc., Third–Party Defendants.**

No. 85–2301–DES.

United States District Court,
D. Kansas.

May 1, 2002.

Mark A. Shaiken, Irvin C. Ness, Stinson Morrison Heckler LLP, Kansas City, MO, James Bird Arnett, Slagle, Bernard & Gorman, P.C., Kansas City, MO, for Plaintiff.

James P. O'Connor, Leawood, KS, Pro se.

James D. Griffin, Michaela M. Warden, Blackwell Sanders Peper Martin, LLP, Kansas City, MO, James M. Warden, Warden Triplett Grier, Overland Park, KS, for Defendant.

Elizabeth L. O'Connor, Leawood, KS, Pro se.

### MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on Defendant, Midwest Pipe Fabricators, Inc.'s ("Midwest") Motion to Revive Dormant Judgment (Doc. 595) and Midwest's Motion for Hearing on Defendant's Motion to Revive Dormant Judgment (Doc. 600). Plaintiff, James P. O'Connor (deceased), by and through Elizabeth O'Connor, sole beneficiary of his estate, Elizabeth O'Connor, and Pipex, Inc., filed a Response to Midwest's motion. (Doc. 597). Midwest filed a Reply. (Doc. 599). The court has reviewed the relevant filings and is now prepared to rule.

## I.  BACKGROUND

The matter currently before the court has an extensive procedural history. James O'Connor originally initiated this litigation in 1985 against Midwest alleging that Midwest failed to pay him certain commissions.  See *O'Connor v. Midwest Pipe & Fabrications, Inc.*, 972 F.2d 1204 (10th Cir.1992) for a detailed description of the background information relating to this case.  Midwest counterclaimed against James O'Connor and filed a third-party complaint against Elizabeth O'Connor, James O'Connor's wife, and Pipex, Elizabeth O'Connor's business.  Midwest's claims against the O'Connors and Pipex included fraud and other state law claims as well as a claim under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961–65.

In February of 1988, after a jury trial, this court entered judgment in favor of Midwest and against James O'Connor in the amount of $743,500, against Elizabeth O'Connor in the amount of $1.00, and, against James O'Connor, Elizabeth O'Connor, and Pipex, jointly and severally, in the amount of $325,000.

Midwest's failed attempts to collect the judgment against the O'Connors and Pipex resulted in extensive court involvement in aid of execution.  On September 16, 1988, a hearing in aid of execution was held. Eventually, on December 12, 1988, the court held the O'Connors in contempt for failure to account for all cash and assets at the hearing in aid of execution.  The court stated that the O'Connors could purge themselves of contempt if they: (a) paid $350,000 into the court; (b) produced for execution all non-exempt assets, and (c) produced evidence of the transfer or other disposition of all assets allegedly transferred during the pendency of the litigation.  The O'Connors moved for reconsideration of the order.  On May 9, 1989, the court denied the motion for reconsidera-

tion and ordered the O'Connors to pay $150,000 into the court within thirty days. On June 9, 1989, the O'Connors filed a motion for a stay of enforcement of the May 9, 1989, order pending their appeal to the Tenth Circuit.  The court refused to grant the motion to stay unless the O'Connors posted a $100,000 bond.  The O'Connors did not post the bond and in a January 3, 1990, the court voiced its intention to issue bench warrants for the O'Connors arrest unless they purged themselves of contempt with a payment of $150,000 into the court.  On January 10, 1990, the Tenth Circuit granted the O'Connor's emergency stay of this court's January 3, 1990, order.

On appeal, the Tenth Circuit vacated the monetary sanctions ordered by the court in its December 12, 1988, and May 9, 1989, orders.  *O'Connor,* 972 F.2d at 1212.  Additionally, the Tenth Circuit vacated the order issuing bench warrants because the warrants were based on the O'Connors failure to pay the monetary sanctions previously ordered.  *Id.* The Tenth Circuit, however, affirmed the court's orders to the extent they found the O'Connors in contempt.  *Id.* The case was remanded back to the district court for further proceedings.

On May 5, 1993, the court ordered the O'Connors to produce themselves for a debtors' examination, to produce all records relating to their personal and business financial affairs, and to produce all copies of bank statements.  (Doc. 584). The court further ordered that the O'Connors would remain subject to sanctions for contempt.  The court received word in December of 1993 that the parties had come to a agreement and were going to settle the case.

Although the court was informed that the case was settled in its entirety, the court did not receive settlement papers. As a result, on May 10, 1994, the court issued an order requiring the counsel for

the parties to appear in court on June 1, 1994, and show good cause as to why the settlement documents had not been filed. (Doc. 585).

According to a June 1, 1994, order issued by the court (Doc. 588), the parties informed the court that they were close to reaching settlement but were experiencing conflict with regard to whether a company known as C–Squared, Inc., ("C–Squared") was or was not an asset of the O'Connors. The parties requested additional time to resolve the conflict over C–Squared and Midwest advised that if the negotiations were not successful, it would seek judicial determination that C–Squared was an asset belonging to the O'Connors. The court allowed an additional two weeks for negotiations. The court also stated that if parties were unable to agree about the status of C–Squared, Midwest had until June 23, 1994, to file a motion seeking judicial determination regarding the ownership of C–Squared. The court additionally set a potential hearing date for July 5, 1994, to hear the motion regarding the status of C–Squared if in fact the motion was filed by Midwest.

The July 5, 1994, hearing was ultimately unnecessary because the parties settled the case. On June 30, 1994, the parties signed a settlement agreement and a stipulation of dismissal. The stipulation of dismissal requested that the court dismiss the post-judgment proceedings but retain jurisdiction to enforce the terms of the settlement agreement. Upon receiving the stipulation, the court ordered the parties to show cause by July 18, 1994, as to why the court should not dismiss the post-judgment proceeding. (Doc. 591). Having not received a response to the show cause order, the court dismissed the post-judgment proceedings with prejudice in an order dated July 20, 1994. (Doc. 592). In the order, the court did not address whether or not it intended to retain jurisdiction to enforce the settlement.

After the July 20, 1994, order dismissing the case, no communications between the parties and court occurred until Midwest filed the motion currently before the court on May 25, 2001. Midwest's motion before the court asks the court to revive the original February 4, 1988, judgment against the O'Connors and Pipex and to issue an execution on the judgment.[1] Finally, it should be noted that James P. O'Connor died on July 20, 1999.

---

1. Remarkably, filings made by both parties in reference to the current motion before the court did not comply with Federal Rule of Civil Procedure 11(a) and D. Kan. Rule 5.1(b). The filings were out of compliance in that they did not contain signatures of attorneys of record. In response to the parties lack of compliance, the court ordered all parties to show cause as to why the filings should not be stricken. (Doc. 602). In its response to the court's show cause order, Midwest insisted that the motion to revive dormant judgment was an "initial pleading [or] motion" filed in the case and therefore counsel entered an appearance by signing the motion. See D. Kan. Rule 5.1(d) (stating that counsel may make an entry of appearance by signing the initial pleading, motion or notice of removal filed in the case). Counsel for the O'Connors and Pipex acknowledged their mistake, cured the mistake by filing an entry of appearance and requested that the court refrain from striking the pleading.

The court first notes that the motion to revive was docketed under the original 1985 case number, defendant did not pay a new filing fee and it did not serve a new complaint. Additionally, the vast majority of case law indicates that courts continually interpret motions to revive as part of the original case and not as an initial motion or pleading. See McCarthy v. Johnson, 35 F.Supp.2d 846, 847 (" 'A proceeding to revive a judgment is not a new action but merely a motion in the original suit ....' ") (quoting Donellan Jerome, Inc. v. Trylon Metals, Inc., 11 Ohio Misc. 265, 270 F.Supp. 996, 998 (1967)); Von Hake v. Thomas, 858 P.2d 193, 196 (Utah Ct.App. 1993) (citing multiple courts who have held

The O'Connors and Pipex argue that Midwest's motion to revive should not be granted for the following reasons: (1) the time for revival has expired because the judgment has been dormant for more than two years; (2) Midwest failed to properly serve the motion upon the O'Connors and Pipex; (3) the execution proceedings were dismissed with prejudice, preventing Midwest from again bringing the same or similar proceeding in this court; (4) the settlement agreement was breached by Midwest; and (5) James P. O'Connor's death precludes revival as to the judgment against him. Because the court finds that the time for revival is determinative on this issue, it will not discuss the various other arguments.

## II. DISCUSSION

In matters of aiding execution of judgments, the Federal Rules of Civil Procedure defer to the laws of the state in which the Federal District Court sits. Fed. R.Civ.P. 69(a); *McCarthy*, 35 F.Supp.2d at 847 (holding that pursuant to Rule 69(a),

revival of a judgment is relief available to a judgment holder that he or she may pursue by complying with state law), *aff'd*, 172 F.3d 63 (10th Cir.1999) (table). Consequently, the court looks to Kansas law for guidance on this issue.

Revival of a dormant judgment is governed by Kansas Statutes Annotated § 60–2404. The statute provides that a dormant judgment may be revived if the holder of the judgment files a motion for revivor within two years after the date on which the judgment became dormant. Kan. Stat. Ann. § 60–2404. According to Kansas Statutes Annotated § 60–2403,[2] a judgment becomes dormant five years from the date of the last renewal affidavit filing or five years from the date of the last execution proceedings undertaken on the judgment. When a judgment remains dormant for two years, the judgment is released and may not be revived. Kan. Stat. Ann. § 60–2403. *See also Long v. Brooks*, 6 Kan.App.2d 963, 636 P.2d 242, 244–45 (1981) (holding that once a judgment grows dormant and is not revived, it becomes absolutely extinguished and unenforceable).[3]

---

that a renewal action is merely a continuation of the original proceeding and not a new and independent action).

Despite counsel's clear failure to comply with the Federal Rules of Civil Procedure and the local rules for the District of Kansas, the court, in exercising its equitable powers, will refrain from striking the pleadings and will decide the motion on its merits.

**2.** The relevant text of the statute reads as follows:

[I]f a renewal affidavit is not filed or if execution, including any garnishment proceeding, support enforcement proceeding or proceeding in aid of execution, is not issued ... within five years from the date of any order reviving the judgment or, if five years have intervened between the date of the last renewal affidavit filed or execution proceedings undertaken on the judgment and the time of filing another renewal affidavit or undertaking execution proceeding

on it, the judgment, including court costs and fees therein shall become dormant .... [W]hen a judgment becomes and remains dormant for a period of two years, it shall be the duty of the clerk of the court to release the judgment of record when requested to do so.

Kan. Stat. Ann. § 60–2403(a)(1).

**3.** The scope of these statutes was explained in *Johnson Brothers Wholesale Liquor Co. v. Clemmons*, 233 Kan. 405, 661 P.2d 1242, 1245 (1983) as follows:

[U]nder theses statutes, a party may, by the issuance of an execution every five years, keep a judgment alive indefinitely. The judgment remains in force without execution for five years, and the plaintiff may revive it at any time within two years if it has become dormant thereafter, so that a plaintiff may neglect his judgment for seven years, lacking a day, and then revive it and put it in force for five years more.

In this action, Midwest contends that the judgment against the O'Connors and Pipex became dormant no earlier than June 1, 1999, five years after the June 1, 1994, show cause hearing. If, as Midwest contends, the judgment became dormant on June 1, 1999, Midwest would have had until June 1, 2001, to file a motion to revive pursuant to § 60–2404. If Midwest's assertions are correct, the motion to revive currently before the court would be considered timely as it was filed on May 25, 2001. The O'Connors and Pipex, however, argue that the June 1, 1994, hearing was not a proceeding in aid of execution and is therefore not the relevant date for purposes of calculating dormancy. Instead, the O'Connors and Pipex argue that the case became dormant, at the latest, on May 5, 1998, five years from the date the O'Connors were ordered to appear for a debtors' examination. If indeed May 5, 1998, is the relevant date for calculating dormancy, Midwest would have had until May 5, 2000, to file a motion to revive.

As stated above, counsel for the parties were ordered to appear in court on June 1, 1994, to show cause as to why settlement papers had not been filed with the court. Midwest contends that this show cause hearing should be construed as a proceeding in aid of execution because the hearing was "aimed at determining whether this court should provide further aid in the execution on the judgment." (Mem. in Supp. of Def. Mot. to Revive Dormant J. at 9). In support of its position, Midwest refers the court to its order issued after the June 1, 1994, hearing which recounts the events of the hearing. (Doc. 588). In the order, the court stated that counsel indicated the delay in the settlement papers was due to a conflict between the parties regarding the status of C–Squared. The court gave the parties an additional two weeks to settle and ordered Midwest to seek an order from the court by June 23, 1994, regarding the status of C–Squared if the parties were unable to reach a settlement agreement. According to Midwest, the court's discussion regarding the status of C–Squared indicates that the June 1, 1994, was a hearing in aid of execution. The court disagrees and declines to construe a show cause hearing ordered by the court as a hearing in aid of execution.

Pursuant to Kansas Statutes Annotated § 60–2419, a judgment creditor is entitled to an order for a proceeding in aid of execution when execution against the debtor is returned unsatisfied. The order for a proceeding in aid of execution requires "the judgment debtor to appear and answer concerning the debtor's property and income . . . ." "The purpose of the proceeding in aid of execution is remedial in that it assists the judgment creditor in obtaining satisfaction of a prior judgment." *Cyr v. Cyr*, 249 Kan. 94, 815 P.2d 97, 100 (1991) (citing *Fleming v. Etherington*, 227 Kan. 795, 610 P.2d 592 (1980)). Clearly, in this instance, the June 1, 1994, was not a hearing in which the debtor was required to "appear and answer" regarding property and income. In fact, only the parties' attorneys were required to appear before the court to show cause as to why there was delay in filing settlement papers.[4]

---

4. The relevant language of the May 10, 1994, order, ordering the parties to appear before court and show cause as to why the settlement papers had not been filed is as follows:

> The court was advised that this case was settled in its entirety in December of 1993. Notwithstanding this advice to the court, settlement papers have not been filed with

the court within a reasonable period. Therefore, *counsel for* the parties are ordered to appear before The Honorable Dale E. Saffels, United States District Judge on Wednesday, June 1, 1994, at 9 a.m., to show good cause why the settlement documents have not been filed in this matter.

(Doc. 585) (emphasis added).

The purpose of the hearing was for the court to ascertain why the settlement papers had not been filed, not to assist Midwest in collecting the judgment from the O'Connors and Pipex. To find that the hearing was an proceeding in aid of execution, the court would have to seriously stretch the scope of the show cause hearing. Such a stretch would clearly be contrary to Kansas law.

The Kansas Supreme Court has strictly construed § 60–2403 for purposes of determining those proceedings, which start the five year period for dormancy. For example, in *Cyr*, the Kansas Supreme Court found that even though the purpose of a contempt proceeding serves the same remedial purpose as an execution, garnishment, income withholding proceeding, and proceeding in aid of execution-namely to aid in collecting a favorable money judgment-contempt proceedings are not enumerated in § 60–2403, and therefore, do not operate to keep the judgment alive. 815 P.2d at 100. *See also DeKalb Swine Breeders, Inc. v. Woolwine Supply Co.*, 248 Kan. 673, 809 P.2d 1223 (1991) (strictly construing the statutory language of § 60–2403 and holding that pending garnishment proceedings do not toll time period for dormancy purposes); *First Nat'l Bank v. Harper*, 161 Kan. 536, 169 P.2d 844 (1946) (holding dormancy statutes should be strictly construed); *St. Joseph Dev. Corp. v. Sequenzia*, 25 Kan.App.2d 514, 968 P.2d 682, 683 (1998) ("Dormancy and revivor statutes are to be strictly construed.").

Because the court finds that the June 1, 1994, was clearly not a hearing in aid of execution and cannot be construed as such, Midwest's motion to revive a dormant judgment was filed out of time. The court agrees with the O'Connors and Pipex and finds the judgment became dormant, at the latest on May 5, 1998. Because Midwest's motion to revive was not filed within two years from that date, the judgment may not be revived.

## III. CONCLUSION

The court finds that the judgment against the O'Connors and Pipex may not be revived because Midwest's motion to revive was filed more than two years after the judgment became dormant. Because the timing of the motion to revive is determinative on this issue, the court will not address the O'Connor's and Pipex's remaining arguments in relation to Midwest's motion to revive.

**IT IS THEREFORE BY THIS COURT ORDERED** that the Defendant's Motion to Revive Dormant Judgment (Doc. 595) is denied.

**IT IS FURTHER ORDERED** that Defendant's Motion for Hearing on Defendant's Motion to Revive Dormant Judgment (Doc. 600) is denied as moot.