No. 24,166.

JOHN LePORIN and A. W. SKAER, *Appellants,* v. THE STATE EX-
CHANGE BANK OF HUTCHINSON, *Appellee.*

SYLLABUS BY THE COURT.

1. ESCROW AGREEMENT—*Deposited in Bank—Assignment of Interest by One
Party—Escrow Papers Released by Bank—Liability of Bank to Assignee.*.
Where a bank accepts papers under an escrow agreement and later releases
them on the request of all the interested parties, it is not liable to the as-
signee of one of such interested parties where it had no notice or knowledge
of such assignment until after such release.

2. SAME—*Escrow Released by Bank—Bank Had No Knowledge of Assignment.*
And where in an action brought by the assignee against the bank to recover
damages for the release of the escrow, no testimony was tendered at the trial
by the assignee showing that the bank had knowledge of the interest of such
assignee at the time of the release, *held,* that a demurrer to assignee's evi-
dence was properly sustained.

3. SAME—*Escrow Agreement Changed by Consent.* An escrow agreement
may be changed or varied by the consent of all the interested parties.

4. SAME—*Assignment—Liability on Assigned Chose in Action.* A party other-
wise liable on an assigned chose in action is not affected by the assignment
until he has knowledge thereof.

5. SAME—*Assignment of Chose in Action—Rights of Assignee.* The assignee
of a contract or rights thereunder takes no greater interest by assignment
than that of his assignor.

Appeal from Reno district court; WILLIAM G. FAIRCHILD, judge. Opinion
filed March 10, 1923. Affirmed.

*S. B. Amidon,* of Wichita, *W. H. Carpenter, W. R. Carpenter,* both of
Marion, *F. L. Martin,* of Hutchinson, and *A. E. Crane,* of Topeka, for the
appellants.

*A. C. Malloy, R. C. Davis,* and *Warren H. White,* all of Hutchinson, for the
appellee.

The opinion of the court was delivered by

HOPKINS, J.: This was an action against the defendant for dam-
ages for alleged violation of an escrow agreement. Plaintiffs appeal
from a judgment of the district court sustaining a demurrer to their
evidence.

The facts were substantially as follows:

On March 17, 1919, Walter Grundy and C. J. Skirvin, with as-
sociates, were the owners of an undivided ¹⁹⁄₄₀ interest in an oil and
gas lease on certain land in Butler county, and on that day entered

into what they termed an escrow agreement which provided for the payment of certain moneys from oil runs to the defendant bank by C. J. Skirvin until a total amount of $302,500 had been paid in. The bank was authorized, upon receiving these amounts, to deliver ⅗ to Walter Grundy and ⅖ to N. K. Skirvin (the wife of C. J. Skirvin). There was attached to the escrow agreement an assignment of certain lease contracts which the bank was authorized to deliver to C. J. Skirvin when the total amount of $302,500 had been paid to Grundy and N. K. Skirvin.

On the same day Walter Grundy, N. K. Skirvin and C. J. Skirvin entered into another agreement which referred to the one above mentioned, wherein it was provided that all moneys over and above $202,500, to wit: the sum of $100,000, should be paid to the Guaranty Title & Trust Company, trustee, when and as it is paid to the defendant bank. This contract further stated that the assignments of certain lease contracts attached to the escrow agreement should remain in possession of the bank until the $100,000 was paid.

It was alleged in plaintiffs' petition that H. D. Mollohan had arranged a sale of the ¹⁹⁄₄₀ interest of Grundy and Skirvin to the Liberty-Texas Oil Company, by virtue of which he was the owner of the $100,000 which was to be paid to the Guaranty Title & Trust Company, and that it was so understood and agreed by the parties, including the defendant bank.

The petition alleges that Mollohan entered into an agreement with the plaintiffs to assign and transfer to them $75,000 of the $100,000 which he was to receive. This agreement, a copy of which was attached to the petition, was as follows:

"EXHIBIT F.

"WHEREAS, By written assignment, dated October 22, 1918, Walter Grundy, C. J. Skirvin and N. K. Skirvin assigned to The Guarantee Title & Trust Company, trustee, one hundred thousand dollars ($100,000) of certain moneys to be paid to The State Exchange Bank of Hutchinson, Kansas, by C. J. Skirvin, trustee; and

"WHEREAS, of said one hundred thousand dollars, the sum of seventy-five thousand dollars ($75,000) will, when received, be the property of the undersigned, H. D. Mollohan, and payable to him when received by The Guarantee Title & Trust Company, trustees, as aforesaid:

"Now, therefore, for a valuable consideration, I, the undersigned, H. D. Mollohan, hereby sell, assign, transfer and set over unto Skaer and LePorin, of Augusta, Kansas, seventy-five thousand dollars of said moneys so assigned to the said The Guarantee Title & Trust Company, trustee, as aforesaid, and hereby authorize and direct the said The Guarantee Title & Trust Company,

trustee, to pay the said sum of seventy-five thousand dollars to the said Skaer and LePorin, when received by them from the said The State Exchange Bank of Hutchinson, Kansas.

"Dated: This 23d day of October, A.D. 1919.

"(Signed)      H. D. MOLLOHAN.

"Notice accepted.

"GUARANTEE TITLE & TRUST CO.,
                              "*Trustees.*

"(Signed)      ROBERT CAMPBELL."

The petition alleges that the defendant, the State Exchange Bank of Hutchinson, had full knowledge of the conditions of said assignment to the plaintiffs; that notwithstanding the escrow agreement, the defendant bank turned over the assignments of said oil and gas leases which were in its possession to Walter Grundy, N. K. Skirvin and C. J. Skirvin and other parties unknown to the plaintiffs.

A verified answer of the defendant contained a general denial with a number of specific defenses, among others, that all of the parties interested in the escrow agreement, Grundy, Skirvin and Mollohan, had desired to change the escrow, and defendant bank, in compliance with their wishes, had turned over the lease, as was more fully confirmed by a letter, a copy of which was attached to the answer, and is as follows:

"OCTOBER 30th, 1919.

"*Mr. C. J. Skirvin, Wichita, Kansas.*

"DEAR SIR: As you know, we are escrow holders of an undivided $19\frac{4}{40}$ interest in and to a certain oil and gas lease covering 120 acres of land in Butler County, Kansas, known as the Eyestone lease, which had been escrowed with us to be delivered, upon the payment to us for the interested party, of a certain sum of money.

"You have advised that you can obtain $125,000 to apply on the payment of the $19\frac{4}{40}$ interest, with the understanding that the balance of the stated consideration under the escrow agreement shall be forthcoming and properly secured in the meantime. With the understanding, however, that upon the payment to you for us as escrow holders of the $125,000 to apply on the purchase price, you are authorized to deliver the assignment of the $19\frac{4}{40}$ interest, seeing to it, however, that the balance of the purchase price is properly secured.

"We have consulted the interested parties with reference to delivering to you this $19\frac{4}{40}$ interest for disposal under these circumstances, and they have authorized us to do so, and we accordingly hand you assignments covering this interest, to be handled as above set forth.

"Will you kindly acknowledge receipt of this letter and the assignments accompanying it at the bottom of the carbon copy hereof, and oblige.

"Very truly yours,
                              "STATE EXCHANGE BANK,
                                    "By F. W. COOTER."

LePorin v. Bank.

"WICHITA, KANSAS, October 30th, 1919.

"I hereby acknowledge receipt of the foregoing letter from The State Exchange Bank of Hutchinson, Kansas, together with assignments, or assignment, covering an undivided 19/40 interest in the above mentioned lease, and agree to handle the same as outlined in said letter.            "C. J. SKIRVIN.

"H. D. MOLLOHAN.

"WALTER GRUNDY.

"Witness: GUY C. GLASCOCK."

To the answer of defendants, plaintiffs filed a verified reply.

No testimony was produced at the trial by plaintiffs to show that the defendant bank had any notice of the assignment or transfer by Mollohan to the plaintiffs, nor was any testimony produced by them to show damages in any amount. A demurrer to the evidence was sustained, and plaintiffs bring the case here.

The contention of plaintiffs can best be stated in their own language:

"POINTS RELIED UPON.

"First: A bank that holds papers in escrow under written instructions and that delivers them in violation of the instructions upon the promise of the other parties to the escrow agreement, that they will see that the balance of the money required by the escrow agreement shall be properly secured, cannot litigate questions of fraud, bad faith, breach of contract or any other question arising among the several parties to the escrow agreement.

"Second: The defendant bank having delivered the papers upon payment of $125,000 to Skirvin, Mollohan and Grundy, and upon their promise to see that the balance of the purchase price is properly secured and without securing the endorsement of The Guaranty Title .& Trust Company, one of the named beneficiaries of the fund, and after the true beneficiary has sold and assigned his title to said fund in the escrow agreement to be paid to The Guaranty Title & Trust Company, is bound to look to the parties to whom it delivered its papers and entrusted the duty of seeing that the balance was properly secured.

"Third: The undisputed evidence shows that the defendant bank violated its duty as an escrow holder and accepted the obligation of Skirvin, Mollohan and Grundy and presumably they are able to indemnify the bank and the bank therefore cannot litigate any questions arising between the parties to the agreements as it is not in privity with any of them.

"Fourth: Presumably the bank is fully indemnified by Skirvin, Mollohan and Grundy and presumably if it had performed its duty as escrow holder, the full amount of the purchase price of the assignments, which it delivered to Skirvin, Mollohan and Grundy would have been paid. It is estopped to deny or show that such payment would not have been made."

On its part, the defendant contends:

First, Escrows may be changed by the interested parties.

Second, No notice having been given to defendant of an assignment by

Mollohan to plaintiffs, defendant was no more liable to plaintiffs than to Mollohan.

Third, That plaintiffs, as assignees, would receive only what Mollohan had.

Fourth, In the absence of a showing that Mollohan's interest had some definite value, plaintiffs below could not recover.

We conclude, from a careful reading of the record, that the Guarantee Title & Trust Company was no more, perhaps, than a prospective accommodation holder for Mollohan. The testimony shows that it had no substantial interest in the prospective fund. It never entered the item upon its books. One of its officers did no more than sign his name to "Notice accepted," on the assignment when presented. Plaintiffs could not be heard to say that the Guarantee Title & Trust Company was the owner of the prospective fund as they had no assignment or conveyance from the trust company, and so to argue would have left them with no standing in court. Had the money been received by the bank for Mollohan it was to have been transferred to the Guarantee Title & Trust Company for him and to be disposed of according to his directions. Mollohan's assignment to the plaintiffs substantiates that theory.

Was the bank liable to Mollohan's assignees after authorization by him to change the escrow agreement, presumably for his benefit? We think not. All the parties to the escrow agreement, Grundy, Skirvin and Mollohan, agreed to change the conditions of the escrow. That the conditions of an escrow are variable by the mutual consent of all of the interested parties is fundamental.

The parties disagree as to whether the instrument from Mollohan to plaintiffs was "an order to pay" or an "assignment." It makes little difference here in the ultimate result. If it was an "assignment," as contended by plaintiffs, one of the requisites to make it effective was seasonable notice to the defendant bank. The defendant had no notice of Mollohan's assignment to the plaintiffs. In 5 C. J. 934 appears this statement:

"The debtor or party liable on an assigned chose in action, is not affected by the assignment until he has notice thereof and consequently he may set up against the claim of the assignee any defense acquired before notice that would avail him against the assignor had there been no assignment and payment by the debtor to the assignor or any compromise or release of the assigned claim by the latter before notice will be valid against the assignee and discharge the debtor, and any valid bargain or agreement between these parties in respect of the claim will be effective as against the assignee. As to such equities, the assignment takes effect from the time the debtor receives notice and not from the time of the assignment."

In 2 R. C. L. 622-624, this language is used:

"The rule established in many jurisdictions is that an assignment of a chose in action is not complete so as to vest title absolutely in the assignee until notice of the assignment has been given to the debtor, and that such notice is necessary in order to protect the assignee not only as it regards the debtor, but likewise as to subsequent assignees or third persons and attaching creditors. . . . In some jurisdictions a debtor may with safety settle with his creditor and pay him unless he had notice or knowledge of an assignment of the whole and not merely a part of the debt. . . . Since the effect of the assignment of a part of a debt is to change materially the situation of the debtor by making him subject to the demands of two persons instead of one, it is generally held that his consent to such an assignment is essential to the creation of any obligation on his part to the assignee."

The plaintiffs, under all the circumstances, could not recover, because they had no greater rights than their assignor, Mollohan.

The plaintiffs contend that the defendant is liable because "it authorized Grundy, Mollohan and Skirvin to accept $125,000 in cash and see that the balance is properly secured and delivers them the assignments."

Certainly, under the circumstances, Mollohan could not recover from the defendant, therefore, plaintiffs, who stand in his shoes, occupy no better position.

In Page on The Law of Contracts, section 2269, it is said:

"The assignee of a contract takes no interest under the assigned contract greater than that which the original party whose interest he takes had therein, at the time when the adverse party to the contract received notice of the assignment, even if the assignee takes for value and without notice."

Section 2270 of the same work reads:

"If, before assignment, the assignor has waived or modified his contract rights, his assignee is bound thereby. An assignee is bound by a contract of compromise and settlement made between the assignor and the original debtor. If the assignor has surrendered his contract to the adversary party conditionally, the assignee cannot enforce such contract as against the adversary party except on failure of such condition. If the insolvency of the assignor has made impossible of performance a contract to secure a loan for him, his assignee takes no rights. . . . If the assignor is to be reimbursed only out of a certain fund, his assignee cannot enforce his claim unless such fund has been created."

The plaintiffs endeavor to avoid these well-settled rules of law. The theory on which they seek to recover is involved with great difficulty. Their contention is indefinite and clouded with uncertainty. They proceed upon the mistaken theory that the defendant bank,

having once accepted the original escrow, could not release it, though requested by all the interested parties, and having so released it, should pay the assignee of one of the parties a claim of which defendant had no knowledge at the time of such release, and then, if possible, indemnify itself from the parties to the original escrow. Their theory is unsound.

In 5 C. J. 962 this language is used:

"The assignee acquires, by reason of the assignment, no greater rights against the debtor than those of the assignor against the debtor at the time of notice to him . . . Nothing will pass to the assignee if the assignor never had the right claimed under the assignment, or if, having had it, he had already disposed of it or had settled the claim on which the right was based."

We conclude that, as Mollohan had already settled and disposed of any claim he might have had against the bank at the time notice of his assignment to plaintiffs came to defendant, plaintiffs cannot recover.

It is not necessary to discuss other questions raised in the briefs. The judgment is affirmed.

HARVEY, J., dissenting.