No. 99,506

ASSOCIATED WHOLESALE GROCERS, INC., *et al.* (CONAGRA, INC., SWIFT-ECKRICH, INC., SAFEWAY, INC., KRAFT FOODSERVICE, INC., PHILLIPS CONFECTIONS, INC. d/b/a PHILLIPS CONFECTIONS & HANOVER, INC., THE FLEMING COMPANIES, INC., INSTITUTE OF LONDON UNDERWRITERS, and COMMERCE AND INDUSTRY INSURANCE COMPANY), *Appellees/Cross-appellants*, v. AMERICOLD CORPORATION and AMERICOLD SERVICES CORPORATION, *Defendants*, and NORTHWESTERN PACIFIC INDEMNITY COMPANY, *Appellant/Cross-appellee.*

(270 P.3d 1074)

■■■■■■■■■■■■■■ Opinion filed December 23, 2011. ■■■■■■■

*James D. Oliver*, of Foulston Siefkin LLP, of Overland Park, and *Benjamin E. Zuckerman*, of Cozen O'Connor, of Philadelphia, Pennsylvania, argued the cause, and *Stephen A. Cozen*, of Cozen O'Connor, of Philadelphia, was with them on the briefs for appellant/cross-appellee.

*John M. Duggan*, of Duggan, Shadwick, Doerr & Kurlbaum, of Overland Park, and *Jack C. Hsu*, of Christensen & Ehret, L.L.P., of Chicago, Illinois, argued the cause, and *Deron A. Anliker*, of Duggan, Shadwick, Doerr & Kurlbaum, P.C., of Overland Park, *Mark E. Christensen* and *Katherine Amelotte Jones*, of Christensen & Ehret, L.L.P., of Chicago, *Robert D. Mullin, Jr.*, of McGrath, North, Mullin & Kratz, P.C., LLO, of Omaha, Nebraska, *JoAnn Butaud*, of Evans and Mullinix, P.A., of Shawnee, *Edward L. Smith*, of Kansas City, Missouri, *William J. Gotfredson*, of Monaco, Sanders, Gotfredson, Racine & Barber, L.C., of Kansas City, Missouri, and *Patrick N. Fanning* and *Richard N. Bien*, of Lathrop & Gage, LC, of Kansas City, Missouri, were with them on the briefs for appellees/cross-appellants.

The opinion of the court was delivered by

JOHNSON, J.: This garnishment action, together with its voluminous appellate record, returns to this court for the third time. See *Associated Wholesale Grocers, Inc. v. Americold Corp.*, 261 Kan. 806, 934 P.2d 65 (1997) (*Americold I*); *Associated Wholesale Grocers, Inc. v. Americold Corp.*, 266 Kan. 1047, 975 P.2d 231 (1999) (*Americold II*). Accordingly, we will refer to the current appeal as *Americold III*.

The appellant in *Americold III* is the garnishee, Northwestern Pacific Indemnity Company (NPIC). The appellees/cross-appellants are the plaintiffs in the garnishment action below (hereafter referred to as Plaintiffs). In that garnishment action, Plaintiffs were seeking to collect the consent judgments they had previously obtained in settlement of their tort actions against Americold. The

judgment debtor in the settled tort action, Americold, is not a participant in the garnishment action, despite being the eponymous party.

NPIC appeals the district court's adverse rulings on the issues that were remanded by *Americold I*, which focused principally on two questions: (1) whether NPIC had acted in bad faith toward its insured, Americold; and (2) whether the consent judgments between Plaintiffs and Americold were reasonable and in good faith. However, the parties also raise jurisdictional issues, one of which is NPIC's contention that the underlying judgments against Americold were extinguished pursuant to K.S.A. 60-2403, thus depriving the district court of subject matter jurisdiction to proceed with this garnishment action. Finding in favor of NPIC on that issue, we reverse the district court and remand with instructions to dismiss these garnishment proceedings.

### FACTUAL AND PROCEDURAL OVERVIEW

Given that we are not reaching the merits of NPIC's issues of bad faith or the reasonableness of Americold's settlement, we need not set forth a detailed recitation of the facts. In *Americold II*, Justice Six provided a summary of what had transpired prior to that 1999 Supreme Court ruling. His recitation will serve our purposes, except that we would note that Justice Six referred to the Plaintiffs as "Associated," which we have modified to "Plaintiffs" here for clarity:

"Our background journey requires a brief return to *Associated Wholesale Grocers, Inc. v. Americold Corp.*, 261 Kan. 806, 934 P.2d 65 (1997) (*Americold I*). *Americold I* involved lawsuits arising out of a fire in Americold's 170 acre underground cold storage facility. Americold had primary general liability coverage for tenant claims of $1 million through National Union Fire Insurance Company (National Union), with $25 million excess coverage through NPIC. TIG Insurance Company (TIG) provided $15 million excess coverage to National Union and NPIC. National Union eventually tendered the $1 million policy limit to plaintiffs, who were various tenants and their subrogated insurers, referenced here as [Plaintiffs].

"Although the fire burned only a part of the stored goods, smoke and other contaminants discharged by the fire damaged other goods stored in the facility. NPIC disclaimed coverage, reasoning that the claimed damages were excluded by the policy's pollution exclusion.

"Concluding that NPIC and TIG were denying coverage, Americold negotiated a settlement with [Plaintiffs]. The settlement included consent judgments totalling. $58,670,754, a covenant by [Plaintiffs] not to execute against the assets of Americold, and an assignment of Americold's claims against its excess insurers, NPIC and TIG. After the settlement, [Plaintiffs] filed a garnishment action against NPIC. The district court granted summary judgment in favor of [Plaintiffs]. We reversed. TIG settled while *Americold I* was on appeal. Material issues of fact remained 'as to the good faith and reasonableness of the settlement amount resulting in the consent judgments, the excess insurer's bad faith in denial of coverage and rejection of settlement within the policy limits, and the liability of the excess insurer for the judgments over policy limits.' 261 Kan. 806, Syl. ¶ 15. We held, however, that the pollution exclusion in the NPIC policy did not exclude coverage. 261 Kan. at 811." 266 Kan. at 1048-49.

Upon remand to the district court, the parties engaged in extensive discovery for a number of years. Ultimately, in the fall of 2005, the district court conducted a 10-week bench trial on the remand issues identified by *Americold I.*

On January 10, 2006, the court conducted a hearing on NPIC's motion to dismiss, in which the garnishee contended that the consent judgments entered in 1994 and 1995 had become dormant and extinguished pursuant to the provisions of K.S.A. 60-2403 and K.S.A. 60-2404. Therefore, NPIC argued, without valid judgments for Plaintiffs to collect, the district court did not have subject matter jurisdiction to proceed with a garnishment action. By journal entry filed January 19, 2006, the district court overruled the motion, finding that enforcement of the consent judgments had been stayed or prohibited within the meaning of K.S.A. 60-2403(c) and that the Supreme Court's remand with directions stayed the time provisions of the dormancy and revivor statutes and prohibited Plaintiffs from executing on their judgments.

A little over a year later, on February 16, 2007, the district court filed a journal entry describing its rulings on the various issues. On the principal issues, the court found that the settlement agreement between the Plaintiffs and Americold represented a reasonable, good faith settlement and that NPIC's denial of coverage was in bad faith, as was its refusal to participate in the settlement conferences and its refusal to settle Plaintiffs' claims within policy limits. The trial court found NPIC liable for the entire amount of the

consent judgments, including the amounts in excess of its policy limits. The court directed the Plaintiffs to prepare, circulate, and present to the court for approval separate journal entries reflecting the adjusted amount of judgment for each plaintiff after deducting the TIG settlement and adding accrued interest and attorney fees to that date. Those journal entries were filed August 27, 2007, with an amended journal entry filed August 28, 2007.

NPIC filed a notice of appeal, the particulars of which will be discussed below. Plaintiffs cross-appealed, claiming the district court erred in denying their claim for punitive damages and complaining about the trial court's exclusion of an exhibit. Upon motion by NPIC, the appeal was transferred from the Court of Appeals to the Supreme Court. See K.S.A. 20-3017.

## JURISDICTIONAL QUESTIONS

### *Notice of Appeal*

The Plaintiffs filed a motion to dismiss the appeal based on alleged flaws in NPIC's notice of appeal. Specifically, Plaintiffs contend: (1) The caption on the notice of appeal only identified the case involving The Fleming Companies, Inc.; and (2) the notice of appeal only purported to seek review of the journal entries of final judgment filed on August 27 and 28, 2007.

### A. *Standard of Review*

"It is a fundamental proposition of Kansas appellate procedure that an appellate court only obtains jurisdiction over the rulings identified in the notice of appeal." *Hess v. St. Francis Regional Med. Center*, 254 Kan. 715, 718, 869 P.2d 598 (1994). Moreover, jurisdictional questions are questions of law subject to unlimited appellate review. See *Foster v. Kansas Dept. of Revenue*, 281 Kan. 368, 369, 130 P.3d 560 (2006).

### B. *Analysis*

The caption on the notice of appeal uses the plural, "Plaintiffs," and identifies those plaintiffs as "THE FLEMING COMPANIES, INC., *et al.*" The abbreviation "*et al.*" means "[a]nd other persons." Black's Law Dictionary 632 (9th ed. 2009). Granted, the caption includes the case number that was assigned only to The Fleming

Companies, Inc. case, but it also contains the case number for the consolidated action involving all of the plaintiffs. Importantly, all plaintiffs are named in the body of the notice of appeal. Moreover, as NPIC points out, the notice was served on all the plaintiffs, was filed in the consolidated case No. 92C4015, and was accompanied with a single supersedeas bond in favor of all plaintiffs in the amount of ·125% of their *combined* judgments. Plaintiffs cannot credibly claim that they were misled as to the matter being appealed.

In *Alliance Mutual Casualty Co. v. Boston Insurance Co.*, 196 Kan. 323, 326-27, 411 P.2d 616 (1966), we applied a liberal construction and "found that the failure to name the court appealed to was not a ground for dismissal but an irregularity to be disregarded unless the appellee has been misled." *Hess*, 254 Kan. at 720. Even the statute governing the content of the notice of appeal provides that an appellant's failure to serve notice of appeal on all other parties "does not affect the validity of the appeal." K.S.A. 60-2103(b). Accordingly, we find that the notice of appeal in this case was sufficient to identify the consolidated case being appealed and thus invoked the jurisdiction of the appellate court on all plaintiffs' judgments.

Next, Plaintiffs point out that the notice of appeal identifies the judgments from which NPIC appeals as the journal entries of final judgment dated August 27, 2007, and the amended journal entry of final judgment dated August 28, 2007. Plaintiffs contend that the notice of appeal has not invoked our jurisdiction to review the district court's denial of NPIC's motion to dismiss because the district court memorialized that ruling in a journal entry file-stamped January 19, 2006. Moreover, Plaintiffs point out that NPIC's notice of appeal did not contain a catch-all phrase, such as stating the appeal is " 'from each and every order entered contrary to [appellant],' " which we found persuasive in *Key v. Hein, Ebert & Weir, Chtd.*, 265 Kan. 124, 128, 960 P.2d 746 (1998).

The journal entries of final judgment to which the notice of appeal refers are those the district judge ordered Plaintiffs to prepare, setting forth the amount that NPIC owed each plaintiff in the garnishment action, as of the date of the court's order finding

the garnishee liable for said amounts. In *Hess*, we applied a liberal construction to find that a notice of appeal specifying that the party was "appealing from . . . the judgment entered by the court" was sufficient to include briefed issues not specifically identified in the notice of appeal, so long as appellee did not claim surprise or disadvantage. 254 Kan. at 719-20. The same rationale should be applicable here, *i.e.*, an appeal of the final judgment includes a previously raised issue as to the district court's jurisdiction to render that final judgment.

Moreover, Plaintiffs' challenge to the judgment extinguishment issue fails on a more fundamental level. The amounts of judgments in the listed journal entries of August 27 and 28, 2007, are actually the amount of tort damages that Americold then owed to each plaintiff upon the judgments to which Americold consented in order to settle the Plaintiffs' consolidated action against Americold. Because this was a garnishment action, *i.e.*, an action to collect the judgments against Americold, NPIC could only be subject to a judgment for the amount of NPIC's indebtedness to Americold under the excess liability insurance contract. See K.S.A. 60-721(a)(4) (in garnishment proceeding court can render judgment against garnishee for amount of indebtedness to the defendant or value of defendant's property held by garnishee). If the consent judgments against Americold were extinguished, then Americold no longer had a legal liability to the Plaintiffs for which NPIC would have been contractually obligated to pay on behalf of Americold. In other words, if the underlying judgment against Americold was extinguished, NPIC was no longer indebted to Americold, and there was no subject matter for Plaintiffs' garnishment action.

To reiterate, without Americold's legally enforceable judgment debt to the Plaintiffs, the district court would not have subject matter jurisdiction to enter a judgment in favor of the Plaintiffs against NPIC as garnishee. It would not matter that the notice of appeal did not mention the district court's earlier ruling on NPIC's motion to dismiss, because parties cannot confer subject matter jurisdiction on the district court by consent, waiver, or estoppel. See *Bruch v. Kansas Dept. of Revenue*, 282 Kan. 764, 773, 148 P.3d 538 (2006). Moreover, if the district court lacked jurisdiction

to enter the judgment against NPIC as a garnishee, then we cannot acquire jurisdiction over the subject matter on appeal. See *State v. McCoin*, 278 Kan. 465, 468, 101 P.3d 1204 (2004). Rather, we have the duty to question jurisdiction on our own initiative. *State v. Harp*, 283 Kan. 740, 746, 156 P.3d 1268 (2007). Accordingly, we will consider NPIC's jurisdictional challenge.

## EXTINGUISHMENT OF CONSENT JUDGMENT

NPIC's argument hinges entirely upon its contention that the Plaintiffs' consent judgments against Americold had become dormant and extinguished pursuant to K.S.A. 60-2403 and K.S.A. 60-2404.

### A. *Standard of Review*

Our review will rely heavily on interpreting the provisions of our dormancy and reviver statutes. The legal questions posed are subject to unlimited review and we need not defer to the trial court's statutory interpretation or construction. *LSF Franchise REO I v. Emporia Restaurants, Inc.*, 283 Kan. 13, 19, 152 P.3d 34 (2007).

### B. *Analysis*

We begin with a recitation of the relevant portions of the applicable statutes. K.S.A. 60-2403 addresses when a judgment becomes dormant and when it must be released of record. It provides in relevant part:

"(a)(1) Except as provided in subsection (d), if a renewal affidavit is not filed or if execution, including any garnishment proceeding, support enforcement proceeding or proceeding in aid of execution, is not issued, within five years from the date of the entry of any judgment in any court of record in this state, including judgments in favor of the state or any municipality in the state, or within five years from the date of any order reviving the judgment or, if five years have intervened between the date of the last renewal affidavit filed or execution proceedings undertaken on the judgment and the time of filing another renewal affidavit or undertaking execution proceedings on it, the judgment, including court costs and fees therein shall become dormant, and shall cease to operate as a lien on the real estate of the judgment debtor. Except as provided in subsection (b), when a judgment becomes and remains dormant for a period of two years, it shall be the duty of the clerk of the court to release the judgment of record when requested to do so.

"(2) A 'renewal affidavit' is a statement under oath, signed by the judgment creditor or the judgment creditor's attorney, filed in the proceedings in which the judgment was entered and stating the remaining balance due and unpaid on the judgment.

. . . .

"(c) The time within which action must be taken to prevent a judgment from becoming dormant does not run during any period in which the enforcement of the judgment by legal process is stayed or prohibited." K.S.A. 60-2403(a)(1), (a)(2), (c).

K.S.A. 60-2404 provides for the revivor of a dormant judgment. Deleting the portions applicable to child support judgments, the revivor provisions are:

"A dormant judgment may be revived and have the same force and effect as if it had not become dormant if the holder thereof files a motion for revivor and files a request for the immediate issuance of an execution thereon if such motion is granted. Notice of the filing of the motion shall be given as for a summons under article 3 of this chapter. If the motion for revivor was filed within two years after the date on which the judgment became dormant . . . , on the hearing thereof the court shall enter an order of revivor unless good cause to the contrary be shown, and thereupon the execution shall issue forthwith. . . . A judgment may also be revived by the filing of a written stipulation of revivor signed by all of the parties affected thereby. For the purpose of this section, . . . any attachment or garnishment process shall have the same effect as the issuance of an execution." K.S.A. 60-2404.

In *DeKalb Swine Breeders, Inc. v. Woolwine Supply Co.*, 248 Kan. 673, 677, 809 P.2d 1223 (1991), we provided the following overview:

"The operation of these statutes has been explained as follows:

'In Kansas, under these statutes, a party may, by the *issuance* of an execution every five years, keep a judgment alive indefinitely. The judgment remains in force without execution for five years, and the plaintiff may revive it at any time within two years if it has become dormant thereafter, so that a plaintiff may neglect his judgment for seven years, lacking a day, and then revive it and put it in force for five years more.' (Emphasis supplied.) *Johnson Brothers Wholesale Liquor Co. v. Clemmons*, 233 Kan. 405, 407-08, 661 P.2d 1242, *cert. denied* 464 U.S. 936 (1983)."

The last garnishment on any of the consent judgments was served on NPIC on January 4, 1995. Subsequently, Plaintiffs did not issue any other execution or file any renewal affidavit on the

consent judgments. NPIC claims that, pursuant to K.S.A. 60-2403(a), the consent judgments became dormant in January 2000, 5 years after the last garnishment was issued. Thereafter, because Plaintiffs did not file a K.S.A. 60-2404 motion for revivor within 2 years of dormancy, NPIC contends the judgments were extinguished on January 5, 2002.

In denying NPIC's motion to dismiss, the district court found

"that the timing provisions of K.S.A. 60-2403 and K.S.A. 60-2404 do not apply to the judgments at issue because pursuant to K.S.A. 60-2403(c) the time within which action must be taken to prevent a judgment from becoming dormant does not run during any period in which the enforcement of the judgment by legal process is stayed or prohibited."

Additionally, the district court found that the remand directions from the Supreme Court had the effect of prohibiting Plaintiffs from executing on their consent judgments and, therefore, the remand mandate effectively stayed the time provisions of the dormancy and revivor statutes. A majority of this court disagrees with the district court's holdings; the dissent would affirm the district court.

At the time the Plaintiffs obtained their consent judgments and commenced this garnishment action, they had the benefit of this court's decision in *DeKalb,* which had interpreted and applied the provisions of K.S.A. 1990 Supp. 60-2403(a) and K.S.A. 1990 Supp. 60-2404. The version of K.S.A. 60-2403 interpreted in *DeKalb* contained the amendments from 1990 Senate Bill 527, which included the addition of the tolling provisions of subsection (c) relied upon by the district court. See L. 1990, ch. 207, sec. 2. Therefore, what should have been of particular interest to the Plaintiffs as they litigated this garnishment action was *DeKalb's* specific finding that "[t]he language of K.S.A. 1990 Supp. 60-2403 is such that the pending garnishment proceeding does not toll the [dormancy statute] time period." 248 Kan. at 678. Accordingly, a closer look at *DeKalb* is appropriate.

In *DeKalb*, judgment was entered against the defendant on June 14, 1982, for damages to DeKalb's hogs as a result of a motor vehicle accident. On January 7, 1983, an order of garnishment was issued against Hartford Fire Insurance Company, the defendant's

cargo insurer. More than 7 years later, on January 22, 1990, DeKalb filed a motion to revive the underlying judgment against the tort-feasor. Apparently, that motion for revivor prompted Hartford to file a motion to dismiss, claiming that the judgment was dormant and extinguished because the garnishment proceedings had not prevented the running of the statutory time provisions. The trial court agreed with Hartford's interpretation and dismissed the garnishment action because the revivor motion had been filed more than 7 years after the issuance of the garnishment against Hartford. 248 Kan. at 676.

Looking at the statutory language, the *DeKalb* court was persuaded that the words, "issued" and "undertaken," manifested a legislative intent that the dormancy time limit clock commences or recommences "to run from the date garnishment or execution is issued and not from the date the garnishment or execution proceeding is completed." 248 Kan. at 680. That determination led to the holding in *DeKalb* which is fatal to the Plaintiffs' cause, notwithstanding the factual distinctions they assert in this case, which is that the continued *pendency* of a garnishment proceeding does not toll the time provisions of K.S.A. 60-2403(a). The fact that the garnishment matter has been appealed and remanded to the district court during its pendency adds nothing to the equation. To stop and restart the dormancy time provisions, another execution or garnishment must issue or a renewal affidavit must be filed.

To the contrary, the district court apparently believed that a remand from the Supreme Court in an ancillary dispute between a judgment creditor and a garnishee has the legal effect of prohibiting the judgment creditor from taking *any other action* to execute on the underlying judgment, such as issuing a garnishment to some other third party who might be indebted to or possess the property of the judgment debtor. The district court did not cite to any legal authority or offer any explanation for its conclusion that a judgment creditor is prohibited from pursuing collection of its judgment from more than one available source at a time. Certainly, that notion does not reasonably flow from the *DeKalb* opinion.

Throughout its opinion, the *DeKalb* court referred to the characteristics of a garnishment action. For instance, after reciting the

Black's Law Dictionary definition of "garnishment," *DeKalb* concluded that "[g]arnishment, then, is directed at a third person, not the judgment debtor." 248 Kan. at 677. In fact, "[n]otice of post-judgment garnishment of a third party is not statutorily required to be served on the judgment debtor." 248 Kan. at 677. Even if notice had been given to the judgment debtor in that case, it would have had no effect on the dormancy issue. 248 Kan. at 678.

*Americold I* was a *garnishment* action, *i.e.*, an action directed at NPIC and not against Americold. Neither of the parties in the tort action appealed the entry of the consent judgments. Accordingly, the efficacy of the judgments—as between Plaintiffs and Americold—could not and should not have been determined in the garnishment litigation. The only issue with respect to the consent judgments which *Americold I* could direct the district court to resolve was whether the judgments were reasonable when viewed from the perspective of the garnishee, NPIC. The answer to that question would affect the enforceability of the judgments against the garnishee, but the remand in *Americold I* did not overturn the underlying consent judgments or effect a stay of their enforceability against anyone else. Of course, when *Americold I* was remanded in March 1997, a dormancy which would occur in January 2000 was not an immediate concern.

Moreover, the collusion inquiry directed by *Americold I* was necessarily limited to whether fraud was perpetrated upon Americold's excess insurance carriers. For those garnishees, it is the consent judgment that creates the property interest being garnished. If the consent judgments are invalid, Americold is not legally liable to pay the Plaintiffs any money. Without Americold being legally liable to the Plaintiffs, NPIC owes no money on its insurance contract with Americold. Without an obligation to pay benefits under the insurance policy, NPIC is not holding any property of and is not indebted to Americold. In simple terms, NPIC only owed the Plaintiffs if Americold owed the Plaintiffs. In contrast, other garnishees, such as a bank in which Americold had deposited money, would not have their own money in jeopardy and would be totally unconcerned with the bona fides of the consent judgments in the event of a garnishment action by the Plaintiffs. In short, there was

no reason for the district court to determine the validity of the Plaintiffs' consent judgments vis-à-vis any other garnishee as to which the indebtedness to the judgment debtor did not depend on the validity of the consent judgments.

Therefore, nothing in the *Americold I* remand precluded Plaintiffs from keeping their judgments alive through execution on other assets of Americold. Granted, Plaintiffs had contracted with Americold to refrain from such other executions or garnishments. However, a creditor that voluntarily agrees with a debtor to forego enforcement of the judgment by legal process against certain assets of the debtor is not legally "prohibited" from taking such action, as contemplated in K.S.A. 60-2403(c). The private agreement may be enforceable by the debtor, but it does not automatically destroy a district court's subject matter jurisdiction to entertain a garnishment or execution proceeding. Rather, subsection (c) obviously contemplates the circumstance where *any* legal process to enforce a judgment is expressly stayed or prohibited by law, such as the automatic stay in the federal Bankruptcy Code, 11 U.S.C.A. § 362 (2011). We are confident the legislature did not intend to permit parties to circumvent the dormancy and revivor time limits by voluntarily agreeing that the judgment creditor would only file a garnishment proceeding against specified assets of the judgment debtor. It would be uncharacteristic for the legislature to permit the tail to wag the dog.

While we are discussing the nature of the property right being garnished, we pause to observe that Americold's assignment to the Plaintiffs of its rights against NPIC does not obviate the need to determine whether the consent judgments became dormant and were extinguished, nor does it give rise to a cause of action that is independent of the consent judgments. The "right" Americold had to assign to Plaintiffs was its right to enforce NPIC's contractual obligation under the liability insurance policy to pay such damages as Americold was legally liable to pay to third parties because of its negligent actions. In this instance, the amounts of damages for which Americold was legally liable were established and memorialized in the consent judgments. If the judgments became dormant and were not revived, then Americold's legal liability to Plaintiffs

was extinguished and NPIC's contractual obligation to pay for Americold's legal liability was likewise extinguished. To be succinct, if Americold has no cause of action against NPIC, then Plaintiffs, as assignees, have no independent, separate, direct cause of action against NPIC. See *LePorin v. Bank*, 113 Kan. 76, Syl. ¶ 5, 213 P. 650 (1923) ("The assignee of a contract or rights thereunder takes no greater interest by assignment than that of his assignor.").

The Plaintiffs also made the alternative argument that the time limit in K.S.A. 60-2403(a) is a statute of limitation, which under K.S.A. 60-208(c) is an affirmative defense that NPIC was required to plead. Therefore, Plaintiffs assert that NPIC has waived the dormancy defense by failing to appropriately plead it.

A similar argument was made in *DeKalb*, where the court differentiated between "an action on a judgment and an execution or garnishment," specifically stating that "a garnishment is not considered a cause of action—it is referred to as an ancillary or auxiliary proceeding." 248 Kan. at 680. Accordingly, *DeKalb* rejected the argument that the time limit for dormancy is analogous to a statute of limitations for a cause of action. 248 Kan. at 680.

Perhaps more specifically, a decade prior to *DeKalb* our Court of Appeals looked at the historical treatment of dormancy and revivor statutes in this and other states and distinguished those statutes from ordinary statutes of limitation by declaring that '[r]evivor statutes demand strict compliance and allow for no exceptions." *Clark v. Glazer*, 4 Kan. App. 2d 658, 660, 609 P.2d 1177 (1980). *Glazer* specifically held:

"Cases cited by plaintiff dealing with equitable estoppel as precluding a defendant from asserting an ordinary statute of limitation are not applicable here. By virtue of [K.S.A. 60-2403], after seven years of inaction by plaintiff her judgment was extinguished, and there was nothing left to which equitable principles could be applied. This declaratory judgment action cannot be used to revive a judgment long dead, and the trial court therefore erred in holding otherwise." 4 Kan. App. 2d at 660-61.

Granted, when *Glazer* was decided, the tolling provision in K.S.A. 60-2403(c) was not part of the dormancy statute; that provision was added in 1990. Further, *DeKalb* applied the 1990 version of K.S.A. 60-2403, but did not specifically discuss the tolling

language in subsection (c). But there is nothing in the tolling provision that would suggest a legislative intent to make dormancy an affirmative defense that must be pled or be deemed waived. Moreover, a necessary corollary to *DeKalb*'s holding that the pendency of a particular garnishment proceeding does not toll the dormancy time provisions is that such a garnishment proceeding does not implicitly effect a stay or prohibition against the enforcement of the underlying judgment by *other* legal process.

In conclusion, we hold that when the district court entered its judgment against NPIC in this garnishment proceeding, the Plaintiffs' underlying consent judgments against Americold had been extinguished by operation of the dormancy and revivor statutes, K.S.A. 60-2403 and K.S.A. 60-2404. Because Americold was not legally obligated to pay an unenforceable judgment, NPIC was no longer indebted to Americold under its contract to pay the judgments for which Americold was legally liable. Accordingly, without an indebtedness from NPIC to Americold, the district court lacked subject matter jurisdiction to grant Plaintiffs judgment against NPIC in a garnishment proceeding. Therefore, we reverse the district court and remand with directions to dismiss these garnishment proceedings.

### MOTIONS FOR ATTORNEY FEES

Following oral argument, the court received two motions for attorney fees and expenses on appeal: one filed on behalf of appellees/cross-appellants Kraft Foodservice, Inc. and Safeway, Inc. requesting a total award of $323,512.67; and the other filed on behalf of appellees/cross-appellants Conagra, Inc., Swift-Eckrich, Inc., The Fleming Companies, Inc., Institute of London Underwriters, and Commerce and Industry Insurance Company requesting a total award of $434,599.44. NPIC responded to the motions, arguing that a portion of the claims were not authorized.

Given our disposition of this appeal, we deny the appellees' motions for attorney fees and expenses on cross-appeal.

Reversed.

BILES, J., not participating.

GREENE, C.J., assigned.

\* \* \*

GREENE, C.J., dissenting: I respectfully dissent because I believe the majority has fundamentally erred in dismissing the appeal based solely on the perception that the consent judgments have become dormant. First, I suggest that the dormancy period has been tolled by K.S.A. 60-2403(c) as a result of and ever since this court's decision in *Associated Wholesale Grocers, Inc., v. Americold Corp.*, 261 Kan. 806, 934 P.2d 65 (1997) (*Americold I*). Second, the dormancy or extinction of the consent judgments was an affirmative defense that was never pled or preserved in the pretrial order by Northwestern Pacific Indemnity Company (NPIC) and has been waived as a matter of law. Third, even if there was no tolling or waiver, the plaintiffs have always held direct assignments of Americold's rights against its insurers and could pursue NPIC without regard to the consent judgments. This case has been pending since 1991, has absorbed thousands of attorney hours and a ton of judicial effort, has at stake $58,000,000 plus interest thereon approaching $40,000,000, and should be decided on its merits.

*The Period Within Which Action Must be Taken to Prevent Dormancy Was Tolled*

The first basis for my dissent is K.S.A. 60-2403, which since 1991 has included the following subsection:

"(c) The time within which action must be taken to prevent a judgment from becoming dormant does not run during any period in which the enforcement of the judgment by legal process is stayed or prohibited."

Examining this provision carefully, the time to take action to prevent dormancy does not run during the entire period in which the judgment creditor cannot enforce its judgment rights because of a stay *or because such action is otherwise prohibited*. Critical is that not only a formal *judicial stay*—such as a bankruptcy filing—

triggers such tolling; but tolling is also triggered if the judgment creditor is in any way "prohibited" from enforcement by legal process.

Our court has held that virtually any reason that squelches enforcement rights should be viewed as sufficient for tolling. See, *e.g., Bank IV Wichita v. Plein,* 250 Kan. 701, 830 P.2d 29 (1992) (default judgment in mortgage foreclosure case prohibited lien creditor from enforcing his lien rights until the default was set aside, even though lien creditor could have filed an execution in the case from which his lien arose). And in a case prior to the 1991 amendment, our Court of Appeals essentially grafted a judicial tolling provision onto the statute in holding that the dormancy period begins to run when *each installment* for periodic child support and alimony is due and it becomes possible to collect it by legal process. Justice Larson explained the preamendment judicial tolling and associated need for enforcement action as follows:

"This general principle has been stated as follows: 'Such statute will not run against a judgment . . . during any time it is impossible to enforce it by final process.' 49 C.J.S., Judgments § 532, p. 985.

. . . .

"An execution and garnishment or other legal process attempting collection would not only have been purposeless conduct, which Kansas has expressly not required (see *Carpenter v. Riley,* 234 Kan. 758, 762, 675 P.2d 900 [1984]), it might have subjected [the judgment creditor] to liability for wrongful conduct. As to the judgment payable in installments, the dormancy period commenced as to each installment when it became due and was collectable by execution or other legal process. The judgment did not become dormant and legal action was taken within the necessary period so that the judgment remained in full force and effect." *Wichita Fed. Sav. & Loan Ass'n v. North Rock Rd. Ltd. Partnership,* 13 Kan. App. 2d 678, 683-84, 779 P.2d 442, *rev. denied* 245 Kan. 788 (1989).

So, the fundamental question before us here is whether it was possible for plaintiffs to take enforcement action by legal process after the mandate and during the remand of *Americold I.* I contend it was not, and the district court so found. When NPIC sought dismissal in the district court in late 2005 due to dormant consent judgments, the district court held:

"This court finds that the timing provisions of K.S.A. 60-2403 and K.S.A. 60-2404 do not apply to the judgments at issue because pursuant to K.S.A. 60-2403(c)

the time within which action must be taken to prevent a judgment from becoming dormant does not run during any period in which the enforcement of the judgment by legal process is stayed or prohibited.

"This court further finds that *the directions to the trial court by the Kansas Supreme Court on remand has, in effect, stayed the time provisions of these two statutes and in effect has prohibited the plaintiffs from executing on said judgments.*" (Emphasis added.)

Did the mandate and remand of *Americold I* truly prohibit enforcement action by legal process on the consent judgments? Careful reading of this court's opinion in *Americold I* leads to an inescapable conclusion: this court did not limit its mandate and remand to an inquiry whether NPIC was bound by the settlement but rather essentially required that the entire underlying settlement, including consent judgments, be reopened and examined for validity. This court found that "material issues of fact remain as to the reasonableness and good faith of the agreement" and that the inquiry on remand was to include an examination of whether the settlement was collusive. 261 Kan. at 810, 829. In fact, this court found that the settlement "may or may not raise concerns of collusion." 261 Kan. at 840. This court summarized its holdings as follows: "Based on the above reasoning, the consent judgments *could be enforceable against NPIC*, if NPIC's denial of coverage and rejection of the policy limits settlement offer were in bad faith and the amount of the consent judgments is reasonable." (Emphasis added.) 261 Kan. at 850.

Thus, the consent judgments themselves were at issue in the remand, and until the district court on remand addressed the concerns of this court, they were not enforceable against NPIC, and that was the only enforcement alternative under the comprehensive settlement because of its inclusion of a covenant not to execute against the judgment debtor. In fact, this court went on to suggest that a host of factors be considered in determining the overall reasonableness of the comprehensive settlement, including bad faith, collusion, or fraud. 261 Kan. at 841. Obviously, if the district court on remand determined that the entire settlement was collusive or fraudulent, the consent judgments would have to be set aside, because this court recognized that the judgments were a critical com-

ponent of the settlement. 261 Kan. at 810; see *Stegman v. Professional & Business Men's Life Ins..Co.*, 173 Kan. 744, 751, 252 P.2d 1074 (1953) ("fraud vitiates whatever it touches including final judgments").

The majority contends that "the efficacy of the judgments . . . could not and should not have been determined in the garnishment litigation." This is an interesting academic proposition, but this is not what happened. This court indeed required the entire settlement—including the consent judgments—to be reopened and examined for validity on remand because the settlements and resulting judgments may have been the product of collusion or fraud. Even if the consent judgments were unassailable prior to *Americold I*, they were certainly no longer final and enforceable thereafter by judicial fiat.

On the question of the mandate's effect on the judgments themselves, it is alarming to observe NPIC's initial answer to this question. In connection with NPIC's motion to prohibit interest claims filed in 2005, NPIC argued that the effect of *Americold I* was to *vacate* the consent judgments. The memoranda filed by NPIC in district court on this issue included the following:

"The effect of the Supreme Court's vacation of the October 12, 1995 Journal Entry of Judgments, and its remand of this matter for complete factual hearings on the reasonableness of the settlement and on the claim of bad faith against NPIC, *is to nullify and render moot the 1994 judgments* . . . . [Thus,] *there are no judgments* rendered by courts of this state upon which interest may accrue." (Emphasis added.)

In fact, although not raised on appeal, I would argue that NPIC should be bound by judicial estoppel from now claiming that the consent judgments have become dormant when it argued vociferously in district court that those judgments had been vacated. Given that NPIC did not specify the earlier order of the district court denying its argument for dormancy in its notice of appeal, there is nothing amiss in appellate review of the point. See *In re Estate of Broderick*, 286 Kan. 1071, 1082, 191 P.3d 284 (2008) (An appellate court may consider an issue first raised on appeal for various reasons, including if it serves "the ends of justice."). NPIC has now taken two wholly inconsistent positions in the same pro-

ceedings in an intentional effort to mislead or confuse the court on the full impact or effect of *Americold I* on the consent judgments. See 28 Am. Jur. 2d, *Estoppel and Waiver* §§ 33, 67 (judicial estoppel focuses on the relationship between the litigant and the judicial system and is designed to prevent litigants and counsel from playing fast and loose with the courts).

Thus, I conclude that the mandate and remand of *Americold I* called into question the fundamental validity of the consent judgments and therefore prohibited any enforcement action thereon during the pendency of these proceedings at all times thereafter. Again, this court expressly held that the consent judgments *"could be enforceable"* if and only if the district court on remand found the amount of these judgments to be reasonable and they were not the product of fraud or collusion. (Emphasis added.) 261 Kan. at 850. They were not enforceable against NPIC, and they were not enforceable as to any other person or entity due *both* to having been undermined by this court's mandate and remand, and due to the associated covenants not to execute, which were given by plaintiffs to Americold in consideration for these judgments.

Cases cited by the majority are not applicable under these circumstances. In *DeKalb Swine Breeders, Inc. v. Woolwine Supply Co.*, 248 Kan. 673, 678, 809 P.2d 1223 (1991), this court held that a pending garnishment proceeding does not toll the dormancy period. But NPIC does not argue and the district court did not find that the pending garnishment proceeding should operate to toll the running of the time limit for dormancy. What tolls the dormancy period is this court's mandate to generally reexamine the underlying settlements and consent judgments, thus prohibiting further enforcement action. The holding in *DeKalb* is simply inapplicable here because tolling based on a remand mandate was not an issue there. *Clark v. Glazer*, 4 Kan. App. 2d 658, 660, 609 P.2d 1177 (1980), was decided prior to the legislative action amending K.S.A. 60-2403 to add the tolling provisions in subsection (c). If the amendment had been in place when *Glazer* was decided, tolling would have saved that judgment because the judgment provided that no execution could be levied until the judgment debtor's income was more than $700 per month. Thus, enforce-

ment action by legal process was arguably impossible until such time as the judgment debtor knew or should have known that the condition precedent to execution was satisfied; instead, the court did not focus on the possibility of enforcement and declared the judgment dormant at the end of the dormancy period because there was no need to examine the possibility of execution during that period. The majority swims in dangerous waters in relying on preamendment case law in construing and applying the amendment. See *Ft. Hays St. Univ. v. University Ch., Am. Ass'n of Univ. Profs*, 290 Kan. 446, 464, 228 P.3d 403 (2010) (when the legislature revises an existing law, the court should presume that the legislature intended to change the law as it existed prior to the amendment).

And finally, on the question of tolling, our first task is to ascertain the legislature's intent through the statutory language it employs, giving ordinary words their ordinary meaning. *Phillips v. St. Paul Fire & Marine Ins. Co.*, 289 Kan. 521, Syl. ¶ 2, 213 P.3d 1066 (2008). Granted, the term "stayed" in the statute contemplates a formal judicial "stay" or automatic stay by law, *but the addition of the term "prohibited" must mean something.* See *State v. Hendrix*, 289 Kan. 859, 863, 218 P.3d 40 (2009) (court rejects an interpretation that would render distinction of terms superfluous); *Board of Sumner County Comm'rs v. Bremby*, 286 Kan. 745, 754, 189 P.3d 494 (2008) (legislature does not intend to enact useless or meaningless legislation).

Our legislature, in its wisdom, did not just provide for tolling in case of a formal judicial stay, but also provided for tolling if enforcement was otherwise "prohibited." K.S.A. 60-2043(c). Again, to hold that "prohibited" does not include an agreement not to execute is a naked suggestion contrary to the rules of statutory construction. The term must mean something beyond a formal judicial stay, and it would be just as true to say we have nothing to suggest that the term "prohibited" should be read as merely equivalent to "stayed" when the additional term by its ordinary meaning has as synonyms "prevented," "hindered," "precluded," or "made impossible." See Black's Law Dictionary, 1381 (9th ed. 2009); Webster's Third New International Dictionary 1813 (1993); *State*

*v. Gracey*, 288 Kan. 252, 257, 200 P.3d 1275 (2009) (in construing legislative intent, ordinary words are to be given their ordinary meaning); *State v. Manbeck*, 277 Kan. 224, 228-29, 83 P.3d 190 (2004) (conjunctions are not to be ignored). I respectfully suggest that the latter truism is consistent with our established rules of statutory construction. See *State ex rel. Topeka Police Dept. v. $895.00 U.S. Currency*, 281 Kan. 819, Syl. ¶ 3, 133 P.3d 91 (2006) (statute not to be read to omit what as a matter of ordinary English language is in it).

Finally, the majority suggests that a covenant not to execute does not "prohibit" execution on other assets of Americold. But would not such efforts constitute a breach of the agreement? If so, would such breach excuse performance by the insurers? And would execution on the questionable judgments after *Americold I* and its mandate constitute wrongful execution and expose plaintiffs to liability? And, finally, would the majority's suggestion of such execution efforts be consistent with our oft-stated policy encouraging and protecting settlements? See *Tilzer v. Davis, Bethune & Jones*, 288 Kan. 477, 496, 204 P.3d 617 (2009) (the law and policy of this State is to favor out-of-court settlements of disputed claims). To encourage a settlement only to judicially declare that a covenant not to execute within a settlement means nothing when it comes to dormancy and reviver obligations is akin to biting the hand that feeds you. Surely the legislature did not intend that tolling *not* apply when an execution is not only contractually prohibited, but the judgment itself remains subject to pending judicial proceedings and execution efforts thereon would create potential liability for the judgment creditor. I contend that the above are precisely what was intended by use of the term "prohibited" in the 1990 amendment to K.S.A. 60-2403.

*Americold I* placed in grave question the validity of the consent judgments and made them subject to being set aside for collusion or fraud. Moreover, this court expressly held that they *"could"* be enforceable *only if* certain findings were made on remand. 261 Kan. at 850. By reason of the covenants not to execute, which were the principal consideration for the consent judgments, plaintiffs were prohibited from taking any enforcement action by legal pro-

cess against any person or entity other than NPIC after the settlement by TIG Insurance Company (TIG). Thus, plaintiffs were prohibited from enforcement action at all times since the mandate of *Americold I*, and the dormancy period was clearly tolled by virtue of K.S.A. 60-2403(c) when that subsection is properly construed and applied.

*NPIC Has Waived Dormancy as a Defense Because It Was Not Pled or Otherwise Preserved*

The second basis of my dissent is that because NPIC failed to plead or to preserve the issue of dormancy in the pretrial order and failed to preserve this issue in its notice of appeal, it has either waived this defense or we are without jurisdiction to address it.

Because K.S.A. 60-2403 qualifies as a statute of limitation contemplated under K.S.A. 60-208(c), NPIC's failure to plead the dormancy/extinction of judgment as an affirmative defense is fatal to its claim. See *Turon State Bank v. Bozarth*, 235 Kan. 786, 788, 684 P.2d 419 (1984) (affirmative defenses must be set forth in a responsive pleading or they are deemed waived); *Washington Avenue Investments, Inc. v. City of Kansas City*, 213 Kan. 269, 269-70, 515 P.2d 744 (1973). Moreover, because the pretrial order failed to list this issue or reference any such contention, the trial court has no jurisdiction to hear or decide the issue. See *Febert v. Upland Mutual Ins. Co.*, 222 Kan. 197, 200, 563 P.2d 467 (1977). Finally, NPIC failed to appeal from the district court order rejecting its dormancy defense, and we have no jurisdiction to address the issue on appeal. See *Gates v. Goodyear*, 37 Kan. App. 2d 623, 629, 155 P.3d 1196, *rev. denied* 284 Kan. 945 (2007).

The defense of dormancy should be considered a statute of limitation, especially after the amendment in 1991 adding the tolling provisions. I contend NPIC should have known this fact from the outset of this prolonged litigation and should have pled the defense from the beginning. In *Director of Property Valuation v. Golden Plains Express, Inc.*, 13 Kan. App. 2d 48, Syl. ¶ 2, 760 P.2d 1227 (1988), the Court of Appeals panel held that "[t]he dormant judgment statute, K.S.A. 1987 Supp. 60-2403, is a statute of limitations." This court has never addressed this precise issue. Therefore,

even the most basic search of Kansas law after 1988 would have revealed this singular appellate precedent and should have prompted the pleading of judgment dormancy as a defense.

Moreover, when the legislature added the tolling provisions of K.S.A. 60-2403(c) to the statute, it became even clearer that the defense of dormancy was becoming more like a statute of limitation. An earlier Court of Appeals case had held that the dormancy statute was "not like ordinary statutes of limitation because "[o]nce a judgment is extinguished there is nothing on which equitable doctrines such as estoppel may operate." *Clark*, 4 Kan. App. 2d 658, Syl. ¶ 2. After the legislature added the tolling provisions, however, the dormancy statute certainly became more like a statute of limitation because there were equitable considerations to be made in applying the tolling provisions before declaring the judgment dormant. Moreover, although there is a split of authority, many jurisdictions consider judgment dormancy provisions to be a statute of limitation. See, *e.g., Davis Intern., Inc. ex rel Patel v. Berryman*, 730 So. 2d 242, 244 (Ala. Civ. App. 1999); *Corvin v. Debter*, 281 Ga. 500, 639 S.E.2d 477 (2007); *State ex rel. West Virginia Dept. of Health and Human Resources v. Varney*, 221 W.Va. 517, 525, 655 S.E.2d 539 (2007); 46 Am. Jur. 2d, *Judgments* § 421.

And even if there was no waiver by reason of the failure to plead dormancy as an affirmative defense, the omission of this defense from the pretrial order herein should bar its assertion at this late date. The pretrial order herein expressly provided that "[t]he trial of this case shall be limited to the issues, witnesses and exhibits listed, and no deviation therefrom shall be permitted" unless by special order of the court. That pretrial order fails to mention dormancy as an issue or as a finding or conclusion sought by NPIC.

Finally, NPIC's notice of appeal was restricted to "the Journal Entries of Final Judgment dated August 27, 2007 [and] August 28, 2007," whereas the district court's order rejecting NPIC's dormancy argument was entered on January 19, 2006. Plaintiffs have argued since the outset of this appeal that the notice was defective and does not preserve an appeal on the dormancy issues. I agree and would hold that this serves as yet another procedural and ju-

risdictional defect that precludes our dismissal of the litigation on the sole basis of judgment dormancy.

A notice of appeal shall "designate the judgment or part thereof appealed from." K.S.A. 60-2103(b); Supreme Court Rules 2.01 (2010 Kan. Ct. R. Annot. 9) and 2.02 (2010 Kan. Ct. R. Annot. 10). Utilization of "catch-all" language, such as "and from each and every order or ruling entered against the appellant" has been recognized as sufficient, but no such language was included in NPIC's notice. See, *e.g., Fletcher v. Anderson,* 27 Kan. App. 2d 276, 283-84, 3 P.3d 558 (2000). Although this court has often been willing to read a notice of appeal broadly, we have not yet addressed a clear omission of the judgment sought to be appealed in a notice that otherwise is specific as to the judgments subject to appeal; the Court of Appeals, however, has held that in such instance, the deficient notice of appeal restricts the court's jurisdiction to the specific judgments appealed from and no others. See *Gates,* 37 Kan. App. 2d at 629. Thus, the defective notice of appeal further buttresses my belief that we should not address the question of dormancy.

Therefore, I contend that NPIC has waived, failed to preserve, and failed to appeal the defense of judgment dormancy or extinction. I would not permit its being raised on appeal, and I respectfully suggest we have no jurisdiction to consider it. It certainly should not be the sole basis for a dismissal of these protracted and highly significant proceedings.

*Dormancy of the Consent Judgments Should Not Preclude a Merits Decision*

As my third and final reason for dissent, I believe that dormancy of the consent judgments should not preclude a decision by this court on the merits of this appeal. The majority erroneously concludes that "[b]ecause Americold was not legally obligated to pay an unenforceable judgment, NPIC was no longer indebted to Americold under its contract to pay the judgments for which Americold was legally liable." This is fallacious. The contract obligations of NPIC arise from a contract of insurance and are not conditioned on or exclusive to the consent judgments; those contractual obli-

gations are not defeated merely by an extinction of the consent judgments.

As a condition of the global settlement, plaintiffs not only required the consent judgments but also procured "an assignment of Americold's claims against its excess insurers [including NPIC]." 261 Kan. at 810. Thus, it is beyond dispute that plaintiffs, as assignees of Americold's rights and as third-party beneficiaries of Americold's contract of insurance with NPIC, have rights against NPIC that are independent of the consent judgments. Obviously, it was far more convenient for plaintiffs to proceed against NPIC in a garnishment proceeding, but the alternative of a direct action has not been precluded.

The majority suggests that Americold's legal liability is extinguished upon the dormancy and extinction of the consent judgments, but this is a fundamental misreading of the settlement agreement. That agreement's principal purpose was to assign Americold's claims against its liability insurers. Although the agreement provides that plaintiffs "may" present the settlement to obtain judgments, there is no basis to suggest that the dormancy or extinction of the judgments should extinguish all contractual liability under the agreement. In fact, the agreement expressly contemplates otherwise. If the contractual covenants somehow "merged" into the consent judgments, this court's dissection of both the agreement and the judgments in *Americold I* was purely academic and improper.

In theory, a direct action by plaintiffs against NPIC would look different from this garnishment action. There would be no consent judgment establishing the amount of the loss and NPIC might have other defenses under its contract of insurance. But at this late date, some 20 years after the fire that arguably triggered coverage, and three trips to the Supreme Court, those nuances have begun to fade. When this court in *Americold I* remanded to the district court with directions to examine the entirety of the settlement between the plaintiffs and Americold, virtually any issue that would control a direct action was on the table. This court mandated that the reasonableness of the settlement, including the amounts, the coverage issues, and NPIC's bad faith, would be included in the scope

of remand. If for no other reason than judicial economy, this court should address the merits framed by this appeal in the hope of precluding an altogether new action being filed with near identical issues. See *Bush v. Strain*, 513 F.3d 492, 500 (5th Cir. 2008) (an appellate court may act in the name of judicial efficiency to reach issues not framed by parties rather than remanding for initial disposition below—thereby inviting another round of appellate briefing and delay).

Kansas law has long reflected a definite preference for merits resolution of litigation rather than strained technical outcomes. See, *e.g.*, *Slayden v. Sixta*, 250 Kan. 23, 30, 825 P.2d 119 (1992). For all these reasons, I would not dismiss this appeal based purely on the purported but specious argument that the consent judgments have become extinct.

In conclusion, this case should not be dismissed based on the belated assertion that consent judgments have become extinct or the erroneous conclusion that dormancy has not been tolled. For any of the three reasons outlined above, this court should address the appeal on its merits and provide to all parties a full and complete adjudication of the issues that have been framed and bring to an end this 20-year dispute on its merits rather than a jurisdictionally defective defense.

ROSEN, J., joins in the foregoing dissenting opinion.