NOT DESIGNATED FOR PUBLICATION

No. 119,947

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DENZEL DURRELL JONES,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; R. WAYNE LAMPSON, judge. Opinion filed November 27, 2019. Affirmed.

*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, of Lawrence, for appellant.

*Ethan Zipf-Sigler*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., BRUNS, J., and WALKER, S.J.

PER CURIAM: Following a 2010 bench trial, the Wyandotte County District Court found Denzel Durrell Jones guilty of second-degree murder. After an unsuccessful direct appeal, Jones filed a timely motion under K.S.A. 60-1507 in which he requested his conviction be set aside and he be granted a jury trial. In his motion, he claimed he received ineffective assistance from his trial counsel. The original trial judge conducted a full hearing on the motion, but recused himself before ruling. After a second district judge reviewed the court records and transcripts of the 60-1507 hearing, he denied Jones'

motion. After considering Jones' objections to the denial in this appeal, we affirm the findings of the district court.

FACTS

*The underlying case*

In April 2010, Jones waived his right to a jury trial before Judge Robert P. Burns. Later that month, after a bench trial, Judge Burns found Jones guilty of second-degree murder. Prior to sentencing, Jones filed pro se a motion for a new trial claiming only that the evidence had been insufficient to convict him of second-degree murder. He argued he should have been convicted of the lesser included offense of involuntary manslaughter. His attorney, Robert DeCoursey, also filed a motion for a new trial, in which he argued the same point. DeCoursey then filed a motion for a downward durational departure asking the district court to sentence Jones under the involuntary manslaughter statute.

As an aside, we note that the journal entry of conviction in this case indicates that Jones was convicted after a guilty plea. This is an error which should be corrected by a journal entry nunc pro tunc to reflect his plea of not guilty.

The district court conducted a hearing on Jones' motions. At its conclusion, Judge Burns stated that after the three-day bench trial in which he heard testimony from several witnesses, the court issued its verdict based on all of the evidence submitted, and he had heard nothing to warrant a change to his decision. Accordingly, the district court denied Jones' motions for a new trial. The court then denied the motion for a durational departure and sentenced Jones to the standard prison term of 131 months based on his criminal history score. The court also ordered that Jones complete 36 months of postrelease supervision, pay restitution, and register as a violent offender for 10 years.

2

Jones filed an unsuccessful direct appeal in which he raised two issues: (1) The evidence was insufficient to convict him of second-degree murder and—"at best"—he was guilty of involuntary manslaughter; and (2) his juvenile adjudications were improperly used to increase his sentence. *State v. Jones*, No. 104,985, 2012 WL 2045347 (Kan. App. 2012) (unpublished opinion). Another panel of our court found the evidence was sufficient to affirm Jones' conviction for second-degree murder and stated, in relevant part:

> "[T]he evidence was sufficient to conclude that although Jones did not intentionally kill Willie Washington, he acted recklessly under circumstances manifesting extreme indifference to the value of human life. Jones was, by his own admission, playing with a loaded gun while under the influence of marijuana, in a small area with three people present. Furthermore, whether intentional or not, Jones aimed the rifle in the direction of Washington and applied at least 4 1/4 pounds of pressure to the trigger, discharging the rifle and killing Washington." 2012 WL 2045347, at *1.

After filing an unsuccessful petition for review with the Kansas Supreme Court, the mandate affirming his conviction and sentence was issued on March 28, 2013.

*Jones' K.S.A. 60-1507 motion*

Almost a year later, Jones filed a motion for relief under K.S.A. 60-1507, in which he claimed DeCoursey "manipulated me into having a bench trial by stating the judge was his good friend and he was going to have a drink with him to see if I should trust [him]." The district court appointed counsel to represent Jones and set the motion for an evidentiary hearing.

At the July 2014 motion hearing, also before Judge Burns, DeCoursey testified that during his representation of Jones, they met "quite often." He noted that he had obtained all of the discovery from the State and reviewed it all with Jones. DeCoursey

3

said that he spoke with Jones about the differences between a jury trial and a bench trial. He explained to Jones that a jury could come back with a verdict of involuntary manslaughter.

DeCoursey said they spoke numerous times about the possibility of a bench trial, but the decision belonged to Jones and he believed Jones understood that he had that right. DeCoursey also said that Jones ultimately agreed that the bench trial was the right thing to do. DeCoursey testified he recommended to Jones that he waive his right to a jury trial because DeCoursey planned to argue that the facts of the case warranted an involuntary manslaughter conviction, which was their goal. DeCoursey disclosed that they would have pled to involuntary manslaughter. He believed that the shooting was accidental based on the issues and the fact that Jones told him drugs were not involved.

DeCoursey testified that he asked Jones numerous times if drugs were involved in his case and Jones "emphatically told me that there was no drugs or alcohol involved whatsoever." Jones admitted he never told DeCoursey that he had been under the influence of marijuana at the time of the shooting but that he testified to being under the influence in court.

DeCoursey testified that—in hindsight—had he known Jones was going to testify to being under the influence of drugs at the time of the shooting, he would not have recommended Jones waive his right to a jury trial. DeCoursey explained he did not think a judge would "look very kindly upon that, especially when you're dealing with a weapon." He went on to explain that being under the influence meant you are acting deliberately or recklessly in handling weapons. DeCoursey stated that under those circumstances the case would have been better tried to a jury.

DeCoursey did not recall if Jones ever expressed his desire to have a jury trial, but he did not believe he pressured Jones into waiving his right to a jury trial. He

acknowledged he told Jones he was friends with the judge, "I'm friends with all the judges, I think," and he explained to Jones that he had tried cases to the bench with this judge before and, based on his experiences in front of the judge, he thought Jones "would get a fair shake in front of Judge Burns."

DeCoursey did not believe he insinuated that Jones would get a better result because of his friendship. He did not recall telling Jones he would get a drink with the judge. "I don't know why I would tell [Jones] that." DeCoursey also did not recall telling Jones he was going to get a drink with the judge to see if Jones could trust him, emphasizing that "I know I wouldn't do that, no."

Jones testified that DeCoursey explained to him the differences between a bench trial and a jury trial. Jones was unfamiliar with a bench trial at the time and had only ever heard of jury trials. Jones said that at the point they had the discussion about a bench trial, DeCoursey had already told Jones he was friends with the judge and was going to go have a drink with him "to see what he was going to tell him" about Jones' case. "I was influenced that it was going to be judged righteously under his friend who he was telling me."

Jones testified that DeCoursey never came back to him to report on this drink and meeting. "He didn't come back and say nothing, but, you know, I assumed that everything, you know, manifested." Jones assumed favorable treatment. He admitted he never told DeCoursey that he wanted a jury trial, and he agreed with DeCoursey about having the bench trial because of his friendship with the judge. Jones felt like DeCoursey pressured him to have the bench trial.

Jones testified that, based on the outcome, the bench trial was not "the best thing to do." At the time, he acknowledged he could have had a jury trial but decided to have a

5

bench trial based on DeCoursey's advice. He thought the bench trial was his best choice, and that is what he wanted at the time.

Following the presentation of evidence and arguments at the hearing, Judge Burns noted that DeCoursey's testimony put him in the position of being a witness. Judge Burns acknowledged he was aware of the allegations in the motion, but Jones' claims in court regarding ex parte communications changed things from "allegations made in a pro se petition to sworn testimony." To avoid the appearance of impropriety, Judge Burns recused himself and referred the matter for reassignment.

In March 2015, a different district court judge, Judge R. Wayne Lampson, filed a journal entry in the case. The district judge noted that he thoroughly reviewed the file, the underlying case, the briefs and arguments, and the transcript of the July 2014 hearing. He found there was no support for Jones' claim that DeCoursey's friendship with Judge Burns had any bearing on the decision of the district court. The court found that DeCoursey's performance did not fall below a standard of reasonableness and determined it was unnecessary to address prejudice. The district court denied Jones' request for relief and dismissed the motion. Jones timely appealed from the dismissal of his motion.

ANALYSIS

On appeal, Jones contends that the district court erred in denying him relief under K.S.A. 60-1507. He claims DeCoursey was ineffective as his trial counsel because DeCoursey manipulated him into waiving his right to a jury trial with suggestions that his friendship with Judge Burns would work in Jones' favor at a bench trial. Jones further claims that he relied on DeCoursey's representations of friendship with the judge and believed he would be convicted of the lesser offense of involuntary manslaughter if he had a bench trial. In response, the State argues the district court's denial of Jones' motion was supported by substantial competent evidence and should be affirmed.

6

As an initial matter, Jones does not claim or argue that his jury trial waiver was not voluntarily or knowingly made. A point raised incidentally in a brief and not argued therein is deemed abandoned. *Russell v. May*, 306 Kan. 1058, 1089, 400 P.3d 647 (2017). Issues not adequately briefed are also deemed waived or abandoned. *In re Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018).

Nevertheless, Jones contends he was entitled to relief on his motion. To be entitled to relief under K.S.A. 2018 Supp. 60-1507, the movant must establish by a preponderance of the evidence either: (1) "the judgment was rendered without jurisdiction"; (2) "the sentence imposed was not authorized by law or is otherwise open to collateral attack"; or (3) "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." K.S.A. 2018 Supp. 60-1507(b) (grounds for relief); Supreme Court Rule 183(g) (2019 Kan. S. Ct. R. 228) (preponderance burden).

Here, Jones alleges he is entitled to relief because his constitutional right to a jury trial was violated when DeCoursey manipulated him into waiving that right to be tried before the bench. Jones contends the issue in this case is "whether or not the disclosure by [DeCoursey] to Mr. Jones that he was friends with the judge and that he was going to have drinks with [the judge], caused Mr. Jones to make a decision he would not otherwise have made to waive a jury trial because he believed his trial counsel had an inside track."

A district court has three options when handling a K.S.A. 2018 Supp. 60-1507 motion:

> "'(1) The court may determine that the motion, files, and case records conclusively show the prisoner is entitled to no relief and deny the motion summarily; (2) the court may determine from the motion, files, and records that a potentially substantial issue exists, in

7

which case a preliminary hearing may be held. If the court then determines there is no substantial issue, the court may deny the motion; or (3) the court may determine from the motion, files, records, or preliminary hearing that a substantial issue is presented requiring a full hearing.' [Citation omitted.]" *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014).

The standard of review depends upon which of these options a district court utilizes. *Sola-Morales*, 300 Kan. at 881. In a case such as this—where the district court conducted a full evidentiary hearing and issued findings of fact and conclusions of law concerning the issues presented—we review the district court's findings of fact to determine whether they are supported by substantial competent evidence and are sufficient to support the court's conclusions of law. Appellate review of the district court's ultimate conclusions of law is de novo. *State v. Adams*, 297 Kan. 665, 669, 304 P.3d 311 (2013); see Rule 183(j).

When the district court conducts an evidentiary hearing on claims of ineffective assistance of counsel, the appellate courts likewise review the district court's factual findings using a substantial competent evidence standard. The district court's legal conclusions based on those facts are then also reviewed de novo. *State v. Butler*, 307 Kan. 831, 853, 416 P.3d 116 (2018).

To prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish (1) that the performance of defense counsel was deficient under all of the circumstances and (2) prejudice, i.e., that there is a reasonable probability the jury would have reached a different result absent the deficient performance. *Sola-Morales*, 300 Kan. at 882 (relying on *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 [1984]).

Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel is highly deferential and requires consideration of all the evidence before the judge or jury. The reviewing court must strongly presume that counsel's conduct fell

within the broad range of reasonable professional assistance. *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014). To establish prejudice, the defendant must show a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different, with a reasonable probability meaning a probability sufficient to undermine confidence in the outcome. *State v. Sprague*, 303 Kan. 418, 426, 362 P.3d 828 (2015).

If counsel has made a strategic decision after making a thorough investigation of the law and the facts relevant to the realistically available options, then counsel's decision is virtually unchallengeable. Strategic decisions made after a less than comprehensive investigation are reasonable exactly to the extent a reasonable professional judgment supports the limitations on the investigation. *State v. Cheatham*, 296 Kan. 417, 437, 292 P.3d 318 (2013) (citing *Strickland*, 466 U.S. at 690-91).

Jones contends that the district court's findings that "whatever friendship Mr. DeCoursey had with Judge Burns, it did not have a bearing on the decision by the Court" did not have "support by a substantial competent evidence [standard]." Substantial competent evidence is "'evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can be reasonably be resolved.'" *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 73, 350 P.3d 1071 (2015).

When a district court's decision is challenged for insufficiency of evidence or as being contrary to the evidence, we do not reweigh the evidence or pass on the credibility of the witnesses. If the evidence, when considered in the light most favorable to the prevailing party, supports the verdict, the verdict will not be disturbed on appeal. *Gannon v. State*, 298 Kan. 1107, 1175-76, 319 P.3d 1196 (2014).

The district court found that DeCoursey's performance was not so deficient that Jones was deprived of his right to counsel and so the court found it unnecessary to address whether Jones was prejudiced. The district court based this finding on the record and Jones' admission that he told DeCoursey that drugs were not involved in the shooting:

> "It is clear that defense counsel, based on the review of the police files and the preliminary hearing, and most importantly from what he had been told by Jones, had as his opinion that his client's best chance of convincing a trier of fact [to convict on the lesser offense of involuntary manslaughter] was with a judge and not a jury. . . . The transcript is clear that trial counsel followed through on that strategy. While this might not be the only approach, this Court does not find this to be ineffective. The evidence against Mr. Jones was substantial, and it is a stretch to suggest that a jury trial would have resulted in any different verdict than what was entered by the Judge."

Without explicitly stating so, the district court was highly deferential and presumed DeCoursey's conduct was strategic and fell within the broad range of reasonable professional assistance. This was proper. See *Kelly*, 298 Kan. at 970; *Cheatham*, 296 Kan. at 437.

Jones' brief focuses almost entirely on framing DeCoursey's testimony to support Jones' argument that he was pressured and manipulated by DeCoursey to waive his right to a jury trial. He argues that the district court's findings were not based on substantial competent evidence, but he does not cite to anything the district court did not already consider. At its core, Jones' appeal is an argument for this court to find his testimony regarding his version of events more credible than DeCoursey's testimony. Essentially, Jones asks us to reweigh the evidence—something we cannot do. See *Gannon*, 298 Kan. at 1175-76.

10

When viewed in a light most favorable to the State, the evidence supports the district court's conclusion that DeCoursey formed an opinion and a strategy that he believed would be most beneficial to Jones and that he based that opinion largely on the false information Jones gave him. Because of this, DeCoursey's performance was not deficient.

Further, even if DeCoursey's representation was ineffective, Jones cannot establish prejudice. Throughout his brief, Jones argues only, for example, that "a jury *may have* convicted [him] of involuntary manslaughter," or that a jury "*could have* come back with an involuntary manslaughter [conviction]," and "the outcome of a jury trial *could have* been considerably different." (Emphases added.) These arguments fall short of meeting Jones' burden to show a reasonable *probability* that, but for DeCoursey's deficient performance, the outcome of the proceeding *would have* been different. The record demonstrates there was not a reasonable probability sufficient to undermine confidence in Jones' conviction for second-degree murder. See *Sprague*, 303 Kan. at 426. This is reinforced by the fact that Jones raised the issue of whether there was sufficient evidence to convict him of second-degree murder in his direct appeal and his conviction was affirmed. Jones failed to show a reasonable probability that, but for DeCoursey's deficient performance, the outcome of the proceeding would have been different.

When the record and evidence presented at Jones' K.S.A. 60-1507 hearing is viewed in a light most favorable to the State, it is clear that under all of the circumstances, DeCoursey's recommendation to Jones to waive his right to a jury trial and be tried by the bench fell within the broad range of reasonable professional assistance. To find otherwise would require us to reweigh the evidence. Even if Jones' could establish as true his claim that DeCoursey manipulated him into waiving his right to a jury trial, Jones cannot establish that he was prejudiced by any deficient representation. We find that the district court's conclusions were supported by substantial competent evidence.

11

Before concluding this opinion, we feel obliged to comment on two particular procedural aspects of this case which we find troubling. First, we believe that it should have been plain from the face of Jones' K.S.A. 60-1507 motion that Judge Burns faced the distinct possibility of becoming a fact witness on the issues in the motion, as Judge Burns himself later acknowledged by recusing himself after he conducted the hearing. We are puzzled that, having decided to go ahead and preside over the hearing, Judge Burns waited until after *all* of the evidence and oral argument was made to decide recusal was appropriate. We do not find the distinction he made between "allegations in a pro se petition" and "sworn testimony" as the reason for the judge's belated recusal to be particularly persuasive. In our view it would have been the better course for Judge Burns to remove himself from any involvement in the case as soon as it was filed.

Second, we are likewise concerned that the district judge who ultimately ruled on Jones' 60-1507 motion, Judge Lampson, did so only by a review of the written record, including a transcript of the proceedings on the motion held before Judge Burns, without holding a new evidentiary hearing.

Our appellate courts have frequently commented on the reason why we do not reweigh evidence presented before a district court. "One of the reasons that appellate courts do not assess witness credibility from the cold record is that the ability to observe the declarant is an important factor in determining whether he or she is being truthful." *State v. Scaife*, 286 Kan. 614, 624, 186 P.3d 755 (2008). In fact, our Supreme Court has referred to "the general rule that appellate courts will not overturn a trial court's weighing of the evidence or assessment of witness credibility from a cold record." *State v. Schaefer*, 305 Kan. 581, 595, 385 P.3d 918 (2016).

We believe the same considerations should apply under the circumstances of this case. A district judge doing a paper review of proceedings at a hearing where important evidence was presented is in no better position than we are in assessing witness

12

credibility. There is no indication in the record that the parties to the K.S.A. 60-1507 hearing were offered the opportunity for a rehearing, obviously including the possibility of Judge Burns testifying, before the district court ruled on the motion from the cold record.

So while we have no doubt that the reviewing district judge diligently considered the entire cold record before making his findings, the fact remains that the judge did not have the opportunity to observe the demeanor of the witnesses and personally assess their credibility before adjudicating Jones' 60-1507 claims. Had Jones raised this omission as an issue on appeal, our inclination would have been to remand this matter for a full evidentiary hearing before the district court, instead of simply a paper review.

But Jones' appeal focused almost entirely upon his claims that DeCoursey was ineffective as his trial counsel. He did not raise the issue of Judge Burns' participation in the hearing of his 60-1507 motion or the lack of a new evidentiary hearing before the reviewing district court, Judge Lampson. An appellate court only obtains jurisdiction over the rulings identified in the notice of appeal. *Associated Wholesale Grocers, Inc. v. Americold Corporation*, 293 Kan. 633, 637, 270 P.3d 1074 (2011). Because of this, although our concerns remain, we lack jurisdiction to consider these as points of error on appeal.

Affirmed.